*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0498p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROXIE NICOLE BOLDS,

*Defendant-Appellant.*

No. 07-5062

>

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20319—Samuel H. Mays, Jr., District Judge.

Submitted: December 14, 2007

Decided and Filed: December 20, 2007

Before: KEITH and CLAY, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Richard C. Strong, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Scott F. Leary, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge. Defendant Roxie Nicole Bolds ("Bolds") challenges, on reasonableness grounds, the twenty-four-month sentence imposed by the district court following its revocation of Bolds' four-year term of supervised release. Bolds argues that the district court committed procedural error by failing to adequately explain its upward departure from the four to ten month advisory sentencing range contained in the United States Sentencing Commission's ("Sentencing Commission") policy statements regarding supervised release revocation sentences. For the reasons that follow, we **AFFIRM** the sentence imposed by the district court.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

# I. BACKGROUND

On January 3, 2003, Bolds pled guilty to one count of aiding and abetting in the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On March 21, 2003, the district court sentenced Bolds to fifty-seven months imprisonment followed by four years of supervised release. Bolds served this fifty-seven-month sentence and commenced her supervised release on April 4, 2006.

The terms of the supervised release imposed by the district court required Bolds to participate in a program, approved by her probation officer, for the treatment of narcotic addiction or drug or alcohol dependency and to report for regular drug screens. Bolds initially reported for the drug screens, but ceased to do so after June 6, 2006. Bolds missed two drug screens in June 2006 and three drug screens in July 2006. In early August 2006, Bobby Appleton ("Appleton"), the probation officer assigned to Bolds' case, confronted Bolds about these missed drug screens and "gave her an absolute final warning, stating that she had already gone past the limit that [is] ordinarily allow[ed] before the court is notified and court action is requested." J.A. at 36. Shortly thereafter, on August 16, 2006, Bolds missed another drug screen.

Instead of reporting for her drug screen on August 16, 2006, Bolds was arrested for shoplifting. Sargent Rita Barnett of the City of Ripley police arrested Bolds and three other persons for stealing merchandise, with an after tax value of over one thousand dollars, from a Wal-Mart store. Bolds and her co-conspirators put items in a shopping cart and, without paying for the items, took the cart out of the store pushing past an elderly Wal-Mart greeter who attempted to stop them. After putting the items in a vehicle, Bolds and her co-conspirators fled the scene and were eventually pulled over by the police who discovered a three-year-old child in the vehicle.

Based on these incidents, Appleton petitioned the district court to revoke Bolds' supervised release on August 17, 2006. On August 22, 2006, pursuant to this petition, the district court issued an arrest warrant for Bolds for violations of the terms of her supervised release. Bolds was also subsequently charged with misdemeanor shoplifting in the local Tennessee court.

At her initial detention hearing in federal district court on September 1, 2006, Bolds was released on bond. The district judge then scheduled a supervised release hearing for September 28, 2006.

During early September 2006, Bolds refused to report to her probation officer and failed to appear for her drug screens. In response to these further violations of the terms of her supervised release, on September 7, 2006, Appleton filed a notification of additional violations and a request for bond revocation with the district court.

On September 28, 2006, Bolds failed to appear at her supervised release revocation hearing in the federal district court and also failed to appear in Tennessee court for her shoplifting charge. In response to her failure to appear, the district judge issued a second warrant for Bolds' arrest.

After Bolds was re-apprehended, the district court held a supervised release violation hearing on December 21, 2006. At this hearing, the district court heard testimony from Appleton and Sargent Barnett regarding Bolds' violations of the terms of her supervised release. Based upon this undisputed testimony, the district court found Bolds in violation of the terms of her supervised release, which it accordingly revoked.

The district court then considered the appropriate penalty to impose for Bolds' violation of the terms of her supervised release. Bolds argued for a sentence within the advisory range of four to ten months suggested by the Sentencing Commission's supervised release revocation policy

statements.[1]  The government, in contrast, contended that due to Bolds' blatant disregard of the conditions of her supervised release, a sentence of twenty-four months was more appropriate.  In considering these arguments, the district judge noted that he was concerned by the "pattern of contempt for the Court and refusal to abide by mandatory conditions" exhibited by Bolds.  The district judge also indicated that he considered Bolds' shoplifting offense to be a "very serious crime" given the assault on the elderly greeter and the involvement of a minor.  The district judge was especially concerned about the offense because it occurred within the context of Bolds' refusal to abide by the conditions of her supervised release.  *See* J.A. at 69 ("She has a history – a substantial history of not participating in drug screens.  She was warned.  And her response to this warning is to commit a serious crime.").  In particular, the district judge stated:

> I won't say that her offense is the most serious that I have seen in this context, but I will say that she is as consistently contumacious in her conduct as any defendant I am able to recall.  That simply means that she is consistently refusing to abide by the mandatory requirements of this Court as anyone.

J.A. at 68.  The district court further observed that Bolds had "never accepted responsibility" for her conduct in the shoplifting case which led it to the conclusion that "there is a significant need to protect the public from Ms. Bolds."  J.A. at 69.  Finally, the district judge recognized the "need to deter others who are on supervised release, who may agree that these are suggestions, instead of requirements."  J.A. at 70.

Evaluating all of these factors, the district court imposed a sentence of twenty-four months imprisonment.  The district judge explained:

> As to a Guidelines sentence, I think one ought to have respect for Congress's mandate in those regards.  But I am charged with exercising my independent judgment and considering the factors of 3553.  And, of course, I have discretion to sentence anywhere within the statutory limits, which is zero to 36 months.
>     It is also apparent to me that Ms. Bolds is not a candidate for further supervised release.  There is nothing in this record that suggests she is going to comply with the conditions of supervised release, to [sic] the instructions of the probation officer, the instructions of the Court, or anybody else.
>     So for those reasons, I believe the government has made a correct recommendation, and a sentence of 24 months in this case is appropriate.  I'm aware that Ms. Bolds is expecting a child . . .  But this is one of those sad cases where the child is probably better off if Ms. Bolds is in a controlled situation than the child would be if she is in the situation that she was in during the period she was on supervised release.

J.A. at 70-71.  After the district court imposed its sentence, Bolds raised one further objection to the sentence on health grounds which was overruled.

On January 10, 2007, Bolds filed this timely appeal.

---

[1]Pursuant to 28 U.S.C. § 994(a)(3), the Sentencing Commission is required to issue either "guidelines *or* general policy statements regarding the appropriate use of . . . the provisions for modification of the term or conditions of supervised release and revocation of supervised release set forth in [18 U.S.C. 3583(e)]." (emphasis added).  To date, the Sentencing Commission has chosen "to promulgate policy statements only."  U.S.S.G. ch. 7, pt. A, Introductory Comments (2006).

## II.  STANDARD OF REVIEW

**A.     The Appropriate Standard to Review Post-*Booker* Challenges to Supervised Release Revocation Sentences**

While not an issue of first impression, the question of which standard governs our post-*Booker* review of sentences imposed upon revocation of supervised release has not been previously answered by this Court.  *See, e.g.*, *United States v. Lewis*, 498 F.3d 393, 397 (6th Cir. 2007) ("The Sixth Circuit has not yet determined whether sentences for violation of supervised release are to be reviewed under the 'plainly unreasonable' standard the Circuit employed for these sentences before the Supreme Court decided *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), or the 'unreasonableness' standard applicable to sentences under the Guidelines post-*Booker*.").  In every case in which we have previously confronted this issue, we have refused to decide which standard of review – "unreasonableness" or "plainly unreasonable" – applies, concluding instead that the particular sentence under review would survive under either standard or fail under both.  *See United States v. Brown*, 501 F.3d 722, 724 (6th Cir. 2007); *Lewis*, 498 F.3d at 397; *United States v. Yopp*, 453 F.3d 770, 773 (6th Cir. 2006); *United States v. Johnson*, 403 F.3d 813, 817 (6th Cir. 2005).  *See also United States v. Younger*, 241 F. App'x 308, 310 (6th Cir. 2007) (unpublished); *United States v. Jiles*, 229 F. App'x 401, 404 (6th Cir. 2007) (unpublished); *United States v. Williams*, 214 F. App'x 552, 554 (6th Cir. 2007) (unpublished); *United States v. Morrow*, 207 F. App'x 591, 592 (6th Cir. 2006) (unpublished); *United States v. Reid*, 206 F. App'x 493, 497 (6th Cir. 2006) (unpublished); *United States v. Soto*, 189 F. App'x 470, 471 n.2 (6th Cir. 2006) (unpublished); *United States v. Brown*, 163 F. App'x 370, 372 n.1 (6th Cir. 2006) (unpublished); *United States v. Tugen*, 157 F. App'x 838, 840 (6th Cir. 2005) (unpublished).  *But see United States v. Carr*, 421 F.3d 425, 432 (6th Cir. 2005) (applying "unreasonableness" review without discussion); *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005) (applying "plainly unreasonable" review without discussion).  Today, however, in light of the recent guidance concerning our post-*Booker* appellate review of district courts' sentencing decisions provided by the Supreme Court in *Gall v. United States*, 552 U.S. __, __ S. Ct. __, No. 06-7949, 2007 WL 4292116 (Dec. 10, 2007), and *Kimbrough v. United States*,  552 U.S. __, __ S.Ct. __, No. 06-6330, 2007 WL 4292040 (Dec. 10, 2007), we take this opportunity to clarify the proper standard of review of supervised release revocation sentences.

Prior to *Booker*, we "review[ed] the district court's sentence upon revocation of a defendant's supervised release for abuse of discretion."  *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998) (citing *United States v. Webb*, 30 F.3d 687, 688 (6th Cir. 1994)).  *See also Brown*, 501 F.3d at 724 (citing *Washington* for the pre-*Booker* standard of review).  Pursuant to this standard, we would "affirm a district court's sentence of imprisonment upon revocation of supervised release if it show[ed] consideration of the relevant statutory factors and [was] not *plainly unreasonable*."  *United States v. McClellan*, 164 F.3d 308, 309 (6th Cir. 1999) (emphasis added); *accord Washington*, 147 F.3d at 491.

This "plainly unreasonable" standard of review was drawn directly from 18 U.S.C. § 3742, the appellate review provision in the Sentencing Reform Act of 1984 ("Sentencing Act"), 18 U.S.C. § 3551, *et seq*.  Sections 3742(a)(4) and 3742(b)(4), which remain intact post-*Booker*, provide, respectively, that the defendant or the government may appeal from a sentence for which there is no guideline, as are all supervised release revocation sentences, if it is "plainly unreasonable." 18 U.S.C. §§ 3742(a)(4) and (b)(4) (2000).  Likewise, § 3742(e)(4), which has now been excised by the Supreme Court in *Booker*, *see* 543 U.S. at 259, required the courts of appeals, when reviewing sentences, to determine "whether the sentence . . . is plainly unreasonable."  *Id*. § 3742(e)(4).

In Justice Breyer's remedial opinion in *Booker*, the Supreme Court excised § 3742(e) from the Sentencing Act in order to render the entire act compatible with the Court's Sixth Amendment

holding. 543 U.S. at 259.  While the Supreme Court appears to have been most concerned with the provisions of § 3742(e) which set forth a "*de novo* [standard of] review for departures from the applicable Guidelines range," *Id*.; *see* 18 U.S.C. § 3742(e)(1)-(3), its holding was that all of "§ 3742(e)" be "severed and excised."  *Booker*, 543 U.S. at 245.  Having excised the appellate review provision of the Sentencing Act, the Supreme Court proceeded to "infer appropriate review standards from related statutory language, the structure of the statute, and the 'sound administration of justice.'"  *Id*. at 260-61 (quoting *Pierce v. Underwood*, 487 U.S. 552, 559-60 (1988)).  The Supreme Court concluded that those factors implied "a practical standard of review already familiar to appellate courts: review for 'unreasonable[ness].'"  *Id*. at 261 (quoting 18 U.S.C. § 3742(e)(3) (1994 ed.)).

Post-*Booker*, the courts of appeals have struggled with the question of whether to continue to review supervised release revocation sentences under the "plainly unreasonable" standard or to apply the *Booker* "unreasonableness" review standard to such cases.  In considering this question, the courts have confronted two issues: (1) whether, by announcing a standard of "unreasonableness" review in *Booker*, the Supreme Court intended to displace the "plainly unreasonable" standard that the courts had used in reviewing supervised release revocation sentences; and (2) whether there is any practical difference between these two standards.

From the twelve circuits, five different approaches have emerged.[2]  The Fourth and Seventh Circuits have found that *Booker* did not displace the "plainly unreasonable" standard of review for supervised release revocation sentences and that review under this standard, while similar to review for "unreasonableness," is not the same.  *See United States v. Kizeart*, 505 F.3d 672, 674 (7th Cir. 2007); *United States v. Crudup*, 461 F.3d 433, 436-439 (4th Cir. 2006).  The Tenth Circuit appears to agree with the Fourth and Seventh Circuits that *Booker* did not change the standard of review of supervised release revocation sentences, but concludes that review under this standard is the same as under the *Booker*-created standard – sentences will be upheld if they are "reasoned and reasonable."  *United States v. Tedford*, 405 F.3d 1159, 1161 (10th Cir. 2005) (quoting *United States v. Tsosie*, 376 F.3d 1210, 1218 (10th Cir. 2004)).  The Second, Third, and Ninth Circuits, in contrast, have found that *Booker* did replace the "plainly unreasonable" standard found in § 3742(e)(4) with an "unreasonableness" standard and, accordingly, have not considered what differences, if any, exist between the two standards.  *See United States v. Bungar*, 478 F.3d 540, 542 (3d Cir. 2007); *United States v. Miqbel*, 444 F.3d 1173, 1176 (9th Cir. 2006) (Reinhardt, J.); *United States v. Fleming*, 397 F.3d 95, 97-99 (2d Cir. 2005).  The Eighth and Eleventh Circuits have likewise held that *Booker* reasonableness review should apply to supervised release revocation sentences, but they have additionally indicated that "the reasonableness standard of *Booker* is the essentially the same as the 'plainly unreasonable' standard of § 3742(e)(4)."  *United States v. Sweeting*, 437 F.3d 1105, 1106 (11th Cir. 2006); *accord United States v. Cotton*, 399 F.3d 913, 916 (8th Cir. 2005).  Finally, our Circuit and the Fifth Circuit have consistently refused to decide either issue.  *See, e.g.*, *United States v. Smith*, No. 07-10041, 2007 WL 4166152, at *1 (5th Cir. Nov. 21, 2007) (unpublished) ("This court has yet to decide which standard of review is applicable to revocation sentences."); *United States v. Jones*, 484 F.3d 783, 792 (5th Cir. 2007); *United States v. Hinson*, 429 F.3d 114, 120 (5th Cir. 2005); *see also supra* p. 4.

Having evaluated these various approaches, we find that, while the Supreme Court in *Booker* did not technically displace the "plainly unreasonable" standard contained in 18 U.S.C. §§ 3742(a)(4) and 3742(b)(4), there is no practical difference between *Booker*'s "unreasonableness" review and the "plainly unreasonable" standard in §§ 3742(a)(4) and 3742(b)(4).  Rather than

---

[2]We note, however, that, as a practical matter, there is essentially only a two-way circuit split between those circuits applying the "plainly unreasonable" standard of review (Fourth, Seventh) and those applying "unreasonableness" review (Second, Third, Eighth, Ninth, Tenth, Eleventh), with two circuits undecided (Sixth, Fifth), and two which have yet to confront the issue (First, D.C.).

creating a new "unreasonableness" standard of review for supervised release revocation sentences, the Supreme Court in *Booker* was simply directing appellate courts to apply the same reasonableness standard that they use to review supervised release revocation sentences to their review of all sentences. Accordingly, for the reasons that follow, we hold that post-*Booker*, this Circuit will review supervised release revocation sentences in the same way that we review all other sentences – "'under a deferential abuse of discretion standard' for reasonableness." *United States v. Lalonde*, __ F.3d __, No. 06-4563, 2007 WL 4321998, at *17 (quoting *Gall*, 2007 WL 4292116, at *2).

The problem in determining whether the Supreme Court in *Booker* intended to replace the "plainly unreasonable" standard of review for supervised release revocation sentences with a reasonableness standard is that the Court excised 18 U.S.C. § 3742(e)(4), which provides for the "plainly unreasonable" standard of appellate review for supervised release revocation sentences, but left intact §§ 3742(a)(4) and 3742(b)(4) which permit a party to appeal such a sentence only on the grounds that it is "plainly unreasonable." On the one hand, the excision of § 3742(e) suggests that the Court meant to replace all previous standards of sentencing review with its "reasonableness" standard. Indeed, the Second Circuit has found such a conclusion to be compelled by *Booker*:

> We recognize that subsections 3742(a)(4) and 3742(b)(4), which have not been excised, allow a defendant and the Government, respectively, to appeal a sentence for which there is no sentencing guideline on the ground that the sentence is "plainly unreasonable." However, once the Court in its Remedy Opinion excised section 3742(e), which included subsection 3742(e)(4)'s standard of "plainly unreasonable" for review of a sentence for which there is no guideline, the Court is fairly understood as requiring that its announced standard of reasonableness now be applied not only to review of sentences for which there are applicable guidelines but also to review of sentences for which there are no applicable guidelines.

*Fleming*, 397 F.3d at 99. On the other hand, the failure to excise §§ 3742(a)(4) and 3742(b)(4) indicates that the Court was not particularly troubled with the "plainly unreasonable" standard that had been used to review supervised release revocation sentences. As we have noted previously:

> While the Second Circuit's interpretation properly attempts to account for the excision of § 3742(e), it fails to account for the fact that *Booker* left sections 3742(a), 3742(b), and 3742(f) on the books, and it fails to account for the fact that (at least as far as our Circuit is concerned) our cases have relied upon both sections 3742(a)(4) and 3742(e)(4) in applying a "plainly unreasonable" standard. *See Washington*, 147 F.3d at 491. While section 3742(e), the standard of review section of the statute, may be gone, sections 3742(a) and 3742(b) which remain, still say that an appeal may not be brought unless the sentence is "plainly unreasonable" and section 3742(f) directs a court to invalidate a "sentence . . . imposed for an offense for which there is no applicable sentencing guideline and [if the sentence] is plainly unreasonable." These sections, by themselves, give us pause about accepting the Second Circuit's approach, as does the fact that we are not dealing with the traditional *Booker* problem (mandatory Sentencing Guidelines), but with a form of sentencing (resentencing after violations of supervised release) that was discretionary before *Booker* and is discretionary after it.

*Johnson*, 403 F.3d at 816-17.

Our hesitation in *Johnson* about finding that *Booker* displaced the standard of review for supervised release revocation sentences is supported by a careful reading of the Court's opinions in *Booker*. As Judge Posner has aptly noted:

Nothing in either of the Court's majority opinions in *Booker* suggests that limiting appellate review of sentences not based on the guidelines is needed to avoid the constitutional problem that required the invalidation of parts of the Sentencing Reform Act in order to save the rest of it. The constitutional problem was that judges were basing sentences on facts that *they* found – not a jury – and by a preponderance of the evidence rather than by proof beyond a reasonable doubt. The Court held that for sentencing grounded in such a factfinding process to be mandatory violated the Sixth Amendment. Changing the standard of appellate review of guidelines sentences was necessary because the standard made the guidelines mandatory in appellate proceedings, complementing 18 U.S.C. § 3553(b), which made them mandatory at the sentencing stage. Since there are no guidelines sentences for violating a condition of supervised release, there was no occasion for the Court in *Booker* to change the standard of appellate review of such sentences. The Court did not mention subsection [3742](e)(4), which governs the appellate review of nonguidelines sentences, because its decision was concerned only with guidelines sentences.

*Kizeart*, 505 F.3d at 674. Indeed, rather than critiquing the "plainly unreasonable" standard of § 3742(e)(4) as it had critiqued the *de novo* standard of review in §§ 3742(e)(1)-(3), the Court in *Booker*, used the "plainly unreasonable" standard as justification for its inference of a general reasonableness standard of review: "'Reasonableness' standards are not foreign to sentencing law. The Act has long required their use in important sentencing circumstances – both on review of departures, and on review of sentences imposed where there was no applicable Guideline." 543 U.S. at 262 (internal citation omitted). The Court also cited to several cases which had reviewed sentences imposed upon revocation of parole or of supervised release. *See id.* (citing *United States v. White Face*, 383 F.3d 733, 737-40 (8th Cir. 2004); *United States v. Tsosie*, 376 F.3d 1210, 1218-19 (10th Cir. 2004); *United States v. Salinas*, 365 F.3d 582, 588-90 (7th Cir. 2004); *United States v. Cook*, 291 F.3d 1297, 1300-02 (11th Cir. 2002); *United States v. Olabanji*, 268 F.3d 636, 637-39 (9th Cir. 2001); *United States v. Ramirez-Rivera*, 241 F.3d 37, 40-41 (1st Cir. 2001)). This favorable citation to cases applying the "plainly unreasonable" standard indicates that the Court did not intend to displace such a standard.

On the contrary, the Supreme Court's favorable references to appellate courts' use of this standard when inferring a post-§ 3742(e) review standard suggests that the Court was not attempting to articulate a new standard distinct from the "plainly unreasonable" standard, but rather that the Court understood its "reasonableness" review to be the same as that required by the "plainly unreasonable" standard. Two of our sister circuits have been understandably hesitant in reaching this conclusion because the statutory placement of the modifier "plainly" in front of "unreasonable" in §§ 3742(a), 3742(b), and 3742(e) suggests that there is a difference between a sentence being "unreasonable" and a sentence being "plainly unreasonable." *See, e.g.*, *Crudup*, 461 F.3d at 438 ("Because there is no indication that Congress intended the word 'plainly' to be surplusage, the best interpretation of these two terms in their context is that they are not coterminous. Congress clearly intended the word 'plainly' to modify 'unreasonable' in some way."). However, as a practical matter it is hard to conceive of what the difference might be, let alone how to articulate such a difference in a meaningful way. *See Kizeart*, 505 F.3d at 674 ("Realism, however, requires acknowledgment that the practical difference between 'unreasonable' and 'plainly unreasonable' is slight, perhaps even nil . . ."). Indeed, the majority of our sister circuits to have considered the issue have found that there is no difference between the two standards, *see Sweeting*, 437 F.3d at 1106; *Tedford*, 405 F.3d at 1161; *Cotton*, 399 F.3d at 916, and the two circuits which have found a difference have failed to convincingly explain it. *See Kizeart*, 505 F.3d at 675 ("[W]hile appellate courts understand and can implement the difference between deferential and nondeferential review, the making of finer gradations within the category of deferential review strains judicial competence. . . . So while we must do our best to mark any gradations prescribed by Congress, we cannot promise

great success in the endeavor."); *Crudup*, 461 F.3d at 439 ("[F]or purposes of determining whether an unreasonable sentence is plainly unreasonable, '"plain" is synonymous with "clear" or, equivalently, "obvious."'"). Likewise, in nearly twenty cases, we have been unable to find any outcome determinative difference between the two standards of review and have instead applied the same type of "reasonableness" analysis used in other post-*Booker* sentencing cases in our discussions of supervised release revocation sentences.[3] *See e.g.*, *Lewis*, 498 F.3d at 397-98. Finally, the Supreme Court's most recent sentencing jurisprudence suggests that the Court does not consider appellate sentencing review to consist of two different standards. *See Gall*, 2007 WL 4292116 at *2. Indeed, the Supreme Court has not instructed us to review supervised release revocation sentences under a different or more deferential standard, but rather directs us to "review *all* sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of-discretion standard." *Id* (emphasis added).

Accordingly, we hold that there is no practical difference between the pre-*Booker* "plainly unreasonable" standard of review of supervised release revocation sentences and our post-*Booker* review of sentences for "unreasonableness." Sentences imposed following revocation of supervised release are to be reviewed under the same abuse of discretion standard that we apply to sentences imposed following conviction. It is this standard which we now clarify in light of the Supreme Court's recent guidance in *Gall*.

## B.       Post-*Gall* Reasonableness Review

Post-*Booker*, we review a district court's sentencing determination, "under a deferential abuse-of-discretion standard," for reasonableness, *Gall*, 2007 WL 4292116 at *2; *see also Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *Booker*, 543 U.S. at 260-61, which, as the Supreme Court has recently confirmed, has two components: procedural and substantive. *Gall*, 2007 WL 4292116, at *7.

Our review of sentences for reasonableness is not to be confused with the district court's task to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a). Reasonableness is the standard *appellate* courts use to evaluate the district court's accomplishment of its sentencing task. *Gall*, 2007 WL 4292116, at *7; *Rita*, 127 S. Ct. at 2465. In imposing a sentence, neither the district court nor the parties are to focus on the "reasonableness" of the sentence, but rather on the sentence's ability to accomplish the sentencing purposes in § 3553(a). *See United States v. Clark*, 469 F.3d 568, 571 (6th Cir. 2007) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)); *accord United States v. Davis*, 458 F.3d 505, 509-10 (6th Cir. 2006).

### 1.       Procedural Reasonableness Review

Our reasonableness analysis begins with a robust review of the "factors evaluated and the procedures employed by the district court in reaching its sentencing determination."[4] *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). A district court necessarily abuses its sentencing

---

[3] We have also been unable to discover any cases from either the Fourth or Seventh Circuits, which do recognize the distinction, in which the distinction between "unreasonable" and "plainly unreasonable" was outcome determinative.

[4] While our review of the district court's determination that the § 3553(a) factors justify the length of the particular sentence imposed is highly deferential, our inquiry into the procedures used by the district court in reaching such a conclusion is more searching. *See Gall*, 2007 WL 4292116, at *7. Indeed, the reason why we afford the district court's delicate balancing of the § 3553(a) factors such deference is because of our assurance that the district court has followed fair procedures that provide for consideration of all of the § 3553(a) factors as well as the parties' sentencing arguments.

discretion if it "commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall*, 2007 WL 4292116, at *7. Accordingly, our procedural reasonableness review consists of three steps.

First, we must ensure that the district court "correctly calculat[ed] the applicable Guidelines range" which are "the starting point and initial benchmark" of its sentencing analysis.[5] *Id.* In reviewing the district court's calculation of the Guidelines, we still review the district court's factual findings for clear error and its legal conclusions *de novo. Lalonde*, 2007 WL 4321998, at *11.

However, the advisory Guidelines range is only one of several factors that the district court must consider at sentencing.[6] *See* 18 U.S.C. § 3553(a). Thus, our second task is to ensure that the district judge gave "both parties the opportunity to argue for whatever sentence they deem appropriate" and then "considered all of the § 3553(a) factors to determine whether they support the sentence requested by [each] party." *Gall*, 2007 WL 4292116, at *7. In evaluating the parties' arguments, the sentencing judge "may not presume that the Guidelines range is reasonable." *Id.*; *accord Rita*, 127 S. Ct. at 2465. Rather, the district judge "must make an individualized assessment

---

[5]Because there are no Guidelines for supervised release revocation sentences, we have directed that "[i]n imposing a term of imprisonment following revocation of supervised release, the district court must consider the policy statements contained in Chapter Seven of the Sentencing Guidelines [as well as] the relevant statutory factors listed in 18 U.S.C. § 3553(a)." *Brown*, 501 F.3d at 724. These policy statements indicate that in imposing such a sentence "the court should sanction primarily the defendant's breach of trust, while taking into account to a limited degree, the seriousness of the underlying crime and the criminal history of the violator." U.S.S.G. ch. 7, pt. A, Introductory Comment 3(b) (2006). The policy statements also provide suggested ranges for appropriate sentences based upon the grade of supervised release violation and the criminal history category of the defendant. *See* U.S.S.G. § 7B1.4(a) (2006).

[6]Section 3553(a) requires a district court to consider the following factors when imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to
    provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training,
    medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
(5) any pertinent policy statement (A) issued by the Sentencing Commission . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (2000).

based on the facts presented" and upon a thorough consideration of all of the § 3553(a) factors.[7] *Gall*, 2007 WL 4292116, at *7.

After the district court's evaluation of the parties' arguments in light of the § 3553(a) sentencing factors, the district judge will impose a sentence and must explain his reasons for selecting the sentence imposed. Accordingly, our final task is to ensure that the district court has "adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* Reversible procedural error occurs if the sentencing judge fails to "set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *Rita*, 127 S. Ct. at 2468.

"[W]hen 'a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007) (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)). Likewise, the record must contain the district court's rationale for concluding that the sentence imposed is "sufficient but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a). While there is "no requirement . . . that the district court engage in a 'ritualistic incantation to establish consideration of a legal issue'" or that the court "make specific findings related to each of the factors considered," *McClellan*, 164 F.3d at 310, the district court must nonetheless provide an "articulation of the reasons the district court reached the sentenced imposed." *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005). Simply "list[ing] the § 3553(a) factors and various characteristics of the defendant" without "refer[ing] to the applicable Guidelines range" or "explaining [the] decision to [stay within or] deviate from that range" is insufficient. *United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006). The district court must provide a clear explanation of why it has either accepted or rejected the parties' arguments and thereby chosen the particular sentence imposed, regardless of whether it is within or outside of the Guidelines. *See Gall*, 2007 WL 4292116, at *7.

If the district judge decides to depart from the advisory Guidelines range, "he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 2007 WL 4292116, at *7. In general, "a major departure should be supported by a more significant justification than a minor one." *Id.* However, we do not, and indeed after *Gall* cannot, "require 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id.* at *6. Likewise, we no longer apply a form of proportionality review to outside-Guidelines sentences, which would require the strength of the justification for a departure to vary in proportion to the amount of deviation from the Guidelines, and find our prior cases applying this rule, *see, e.g.*, *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006), to have been effectively overturned by *Gall*. *See Gall*, 2007 WL 4292116, at *6.

To summarize, in reviewing sentences for procedural reasonableness we must ensure that the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen,

---

[7]For supervised release revocation sentences, 18 U.S.C. § 3583(e) omits from the list of factors to be considered § 3553(a)(2)(A) ("the need of the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and § 3553(a)(3) ("the kinds of sentences available"). *See* 18 U.S.C. § 3583(e) (2000). However, "it does not constitute reversible error to consider § 3553(a)(2)(A) when imposing a sentence for violation of supervised release, even though this factor is not enumerated in § 3583(e)." *Lewis*, 498 F.3d at 399-400.

including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

### 2.     Substantive Reasonableness Review

After we have found the district court's sentencing decision to be procedurally sound, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 2007 WL 4292116, at *7. In reviewing for substantive reasonableness, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* For sentences within the Guidelines, we may apply a rebuttable presumption of substantive reasonableness. *Gall*, 2007 WL 4292116, at *7; *Rita*, 127 S. Ct. at 2456; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). We may not, however, apply a presumption of unreasonableness to outside-Guidelines sentences. *Gall*, 2007 WL 4292116, at *7. In general, we must give "due deference" to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors. *Id.* "The fact that [we] might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

### III.  DISCUSSION

Bolds contends that her twenty-four month sentence is procedurally unreasonable[8] because "the district court failed to state why a 140% increase from the high end of the Guidelines was necessary." Def. Br. at 10. In particular, she argues that because her supervised release violation conduct was already "taken into account by the Sentencing Commission when they promulgated the Guideline imprisonment range for a Class B offense by a defendant with a Criminal History Category of I" the district court could not simply rely upon this violation conduct in justifying an upward departure from the advisory sentencing range of four to ten months, but rather was required to provide further explanation for the departure. *Id.* at 14. In opposition, the government argues that the district court properly considered that the § 3553(a) factors justified an upward departure from the sentencing range suggested in the Sentencing Commission's policy statements. *See* Gov. Br. at 11-19. We find that the district court did not commit any significant procedural error in imposing Bolds' sentence and agree with the government that the twenty-four month sentence was procedurally reasonable.

The district court accurately determined that the Sentencing Commission's policy statements recommended a sentencing range of four to ten months. Likewise, the record demonstrates that the district court considered the § 3553(a) factors, including these advisory policy statements of the Sentencing Commission, as well as Bolds' arguments for a lower sentence, and explained his reasons for imposing a twenty-four month sentence. The district court noted in detail the nature and circumstances of Bolds' conduct in violating the terms of her supervised release, considering in particular her numerous failures to appear for drug screening, the facts of her shoplifting offense, and Bolds' "drug problem." J.A. at 67-69. The district court also recognized the "need for the sentence to protect the public from Ms. Bolds" based on her failure to accept responsibility for her actions and the "need to deter others who are on supervised release, who may agree that these are suggestions instead of requirements." *Id.* at 69-70. The district court further considered whether

---

[8]Bolds has not contested the substantive reasonableness of her sentence and we do not consider the issue on appeal. *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 988, 995-96 (6th Cir. 1997))). Moreover, even if Bolds had raised the issue of the substantive reasonableness of her sentence on appeal, we are not convinced that the district judge abused his discretion by imposing a sentence which is twelve months lower than the statutory maximum. *See* 18 U.S.C. § 3583(e)(3) (providing for a three year statutory maximum for supervised release revocation sentences when the underlying felony is a class B felony). Given Bolds' consistent failure to abide by the conditions of her supervised release, we cannot say that twenty-four months is unreasonably greater than necessary to accomplish the purposes of sentencing described in § 3553(a).

incarceration would best serve Bolds and her baby's medical needs. *See id*. at 71 ("I'm aware that Ms. Bolds is expecting a child, . . . [b]ut this is one of those cases where the child is probably better off if Ms. Bolds is in a controlled situation than the child would be if she is in the situation that she was in during the period she was on supervised release."). Finally, the district court considered the four to ten month sentencing range suggested by the Sentencing Commission's policy statements, *id*. at 67, and the Sentencing Commission's indication that the court should primarily sanction Bolds for her breach of trust in failing to abide by the conditions of her supervised release. *See id*. at 68.

In short, as required by our procedural reasonableness jurisprudence, the district court engaged in its own evaluation of the § 3553(a) factors and utilized its discretion to vary from the Sentencing Commission's recommendations. The district court provided a sufficiently compelling justification for its departure from the Sentencing Commission's recommendations – Bolds' "consistently contumacious" conduct in failing to abide by the terms of her supervised release and the "seriousness" of these supervised release violations. J.A. at 68. The district court also explained how this twenty-four month sentence was necessary to serve the sentencing purposes in § 3553(a), including the need to deter others from such conduct, the need to protect the public from Bolds, and the need to provide Bolds and her child with necessary medical care. In light of the district court's careful consideration of the § 3553(a) factors and thorough explanation of its reasons for imposing a twenty-four month sentence, we do not consider Bolds' sentence to violate the requirements of procedural reasonableness.

## IV.  CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is **AFFIRMED**.