NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0031n.06
Filed: January 15, 2009

No. 07-5188

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KELLOA M. FIELDS, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and KETHLEDGE, Circuit Judges; RESTANI,[*] Judge.

**PER CURIAM.** The defendant, Kelloa Fields, appeals from the judgment of the district court revoking the period of supervised release imposed in a prior criminal proceeding and imposing a new 60-month term of imprisonment for the violation leading to the revocation. Specifically, Fields contends that the new sentence, which is higher than the applicable guideline range, is unreasonable. We disagree and, therefore, affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

---

[*]Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

While subject to five years of supervised release following service of a 94-month prison term for possession with intent to distribute cocaine base, Kelloa Fields was arrested on an unrelated charge of second-degree murder. Because one condition of his supervised release required that Fields "not commit another federal, state, or local crime," the defendant's probation officer requested that the supervised release be revoked in light of the murder charge.

At the revocation hearing, the government presented witnesses whose testimony connected Fields with an aggravated assault, if not with second-degree murder. Two individuals, Gary Schoonover and Albert Rhea, testified that they were driving together on North Hollywood Boulevard in Memphis when they saw Fields running down the sidewalk after another individual who appeared to be a male teenager or child. At one point during the chase, the smaller individual, who was later identified as 24-year-old Stacy Davis, ducked between two vehicles parked along the street in an apparent effort to escape from Fields. Eventually, however, the defendant caught up with Davis and was seen raising his leg in a kicking motion toward Davis's lower back. Although neither Schoonover nor Rhea actually saw Fields's foot contact Davis, one of the witnesses testified that he saw "what looked like the adult pushing [Davis] out [into the street] with his foot." Unfortunately, as Davis was pushed into the lanes of traffic, an automobile driving by hit the victim, killing him. Both Schoonover and Rhea claimed unequivocally, however, that the driver of that vehicle had no opportunity whatever to avoid the collision.

Additional evidence introduced at the hearing indicated that the defendant's anger at Davis resulted from a disagreement over money owed by Davis and Davis's fiancee to the defendant and to the defendant's girlfriend. Further information supplied through police reports confirmed that Fields had attacked Davis prior to chasing him down the sidewalk and that the defendant "slapped [Davis] and then repeatedly punched him in the stomach. Then threw him on the ground and started kicking him in the face, stomach, and the head." Fields did not dispute that he and Davis fought over an unpaid debt or that he chased Davis down the street. He insisted, however, that he did not push or kick Davis into traffic but, instead, that Davis, of his own volition, ran into the street to escape from the defendant.

In ruling upon the revocation request, the district judge pointed out the serious, vicious nature of the crime that involved an attack by Fields, a 250-pound man, upon a mentally-challenged, 125-pound man who was such slight build that witnesses thought he was a child or a teenager. The district judge also discussed the need to protect society, the need to deter other persons from committing crimes, and the need to provide just punishment for an individual who callously violated the supervised release prohibition on commission of additional crimes. Finally, when discussing consideration of the relevant guideline sentencing range, the district court stated:

> In this case, the guideline range is lower than the [statutory] maximum, but it is substantial, and it might constitute an appropriate sentence in the case. The guideline range in the case is 27-33 months. We also want to avoid in any situation unwarranted sentencing disparity when we're sentencing

individuals. Those are all things that the court should consider. It would be hard to contemplate any case that is more appropriate for a high end sentence. Even the admitted facts are disturbing, extremely disturbing. The facts that are somewhat contested, but not contested in this case with any credible proof are even more disturbing. This is a case where the appropriate sentence is, in fact, five years incarceration in a federal facility. So what we will do in this case is enter a judgment to that effect.

\* \* \* \* \*

I have considered whether it should be, for example, 33 months, plus a period of additional supervision because that is what I was considering as the alternative, and whether that might be more constructive, that's what I was debating, frankly. And in my mind, if I – it has some appeal, the problem is the gravity of the offense conduct.

## DISCUSSION

Before this court, Fields does not challenge the actual revocation of his supervised release following his arrest for second-degree murder. Indeed, section 7B1.3(a)(1) of the United States Sentencing Guidelines mandates that "[u]pon a finding of a Grade A . . . violation [(a federal, state, or local offense that is a crime of violence and is punishable by a term of imprisonment exceeding one year)], the court *shall* revoke probation or supervised release." (Emphasis added.) Instead, Fields contends only that the prison sentence imposed upon him after such revocation should have been a sentence within the applicable guideline range rather than a prison term equal to the statutory maximum punishment.

Upon finding, by a preponderance of the evidence, that a defendant has violated a condition of supervised release, a court may revoke that supervised release "and require

the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision." 18 U.S.C. § 3583(e)(3). Thus, because the district court originally sentenced Fields to five years of supervised release after service of his prison sentence for possession with intent to distribute crack cocaine, in revoking the defendant's supervised release, the court was statutorily authorized to impose an additional prison term of up to five years. According to the relevant sentencing guidelines, however, the range of imprisonment applicable to a criminal history category II offender who was on supervised release as a result of a Class A felony and who committed a Grade A violation is only 27-33 months. *See* U.S.S.G. § 7B1.4(a)(2). The defendant insists that consideration of the sentencing factors listed in 18 U.S.C. § 3583(e) supports a sentence within that guideline range and that the 60-month sentence imposed by the district court is thus unreasonable.

We review sentences imposed following the revocation of supervised release in the same manner that we review other sentences in the aftermath of the United States Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007). Consequently, we apply "a deferential abuse of discretion standard for reasonableness" to the district court's sentencing determination. *See id.* (citations and internal quotation marks omitted).

Pursuant to the explicit terms of § 3583(e), a district court may sentence a supervised release violator to an additional prison term "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." In this case, the district judge clearly considered such factors and, although not referencing each delineated subsection of 18 U.S.C. § 3553(a), did comment upon: (1) the nature and circumstances of the offense, including the "great disparity in size" between the defendant and the victim; (2) the history and characteristics of the defendant, emphasizing that Fields's criminal conduct was not aberrant behavior but simply another example of Fields's inability to fulfill his societal responsibilities; (3) the need to protect society, deter others from crime, and impose a just punishment when there is "repeated conduct involving criminal activity"; (4) the possibility of imposing additional conditions of release and extra rehabilitative activity; and (5) the avoidance of unwarranted sentencing disparities. Of course, "[t]here is no requirement . . . that a district court engage in a ritualistic incantation to establish consideration of a legal issue. Nor is there a requirement that a district court make specific findings relating to each of the factors considered." *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (citations and internal quotation marks omitted).

Nevertheless, a sentencing court must still "provide at least an indication of its reasons for imposing a sentence that exceeded the recommended sentencing range." *Id.* On appeal, Fields does not suggest that no such explanation was offered. Instead, he contends that reference to the applicable section 3553(a) factors was "illusory and not

actual" and that the sentencing court gave "undue weight to the details of the new criminal offense," a factor not mentioned in 18 U.S.C. § 3583(e)'s list of sentencing considerations.

Without question, section 3583(e) does not list among the factors that may be considered in resentencing after revocation of supervised release those evaluations identified in 18 U.S.C. § 3553(a)(2)(A) – "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." In *United States v. Lewis*, 498 F.3d 393, 399-400 (6th Cir. 2007), *cert. denied*, 129 S.Ct. 43 (2008), however, the Sixth Circuit held "that it does not constitute reversible error to consider § 3553(a)(2)(A) when imposing a sentence for violation of supervised release, even though this factor is not enumerated in § 3583(e)." In making that determination, the court stated:

> First of all, § 3583(e) provides merely that the court "may, after considering the [specified] factors . . . revoke a term of supervised release." It does not state that a court may revoke supervised release after "*only* considering" the enumerated factors. Second, the three considerations in § 3553(a)(2)(A), namely the need "to reflect the seriousness of the offense," "to promote respect for the law," and "to provide just punishment for the offense," are essentially redundant with matters courts are already permitted to take into consideration when imposing sentences for violations of supervised release.

*Id.* at 400.

The district court's sentencing determination thus entailed consideration of appropriate statutory factors. In light of those factors, especially the specter of a six-foot-two-inch, 250-pound defendant viciously assaulting a five-foot-four-inch, 125-pound,

mentally-handicapped individual over a monetary debt, chasing the smaller man down the street, and then propelling him into oncoming traffic, the 60-month sentence imposed by the district judge is at least reasonable. Consequently, according that sentencing determination the deference to which it is due, the district court did not abuse its discretion in imposing the challenged sentence upon Fields.

## **CONCLUSION**

For the reasons set out above, we AFFIRM the judgment of the district court.