NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0677n.06

Case No. 17-3107

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 07, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| SYLVESTER MARKS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE: GILMAN, SUTTON, and STRANCH, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Sylvester Marks appeals his sentence of 36 months' imprisonment for violating the terms of his supervised release. He argues that his sentence is both procedurally and substantively unreasonable. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Marks has an extensive criminal history. It began in 1987, when, at age 18, he was convicted of petty theft and forgery. The following year, Marks was convicted of receiving stolen property. And in 1989, he was convicted of drug trafficking. He also committed a robbery that year, for which he received a sentence of 3 to 15 years' imprisonment.

Marks was later paroled. While on parole, he accumulated numerous violations. His parole was not revoked, however, until he was charged with attempted robbery, resisting arrest, and assault on a police officer. Six months' confinement followed. Marks was released in 2004.

The day after his release, Marks participated in a bank robbery. He was subsequently arrested and found to be in possession of crack cocaine. Federal charges followed. After Marks pleaded guilty to receiving stolen property and possessing crack cocaine with intent to distribute, the district court sentenced him to 151 months in prison to be followed by a three-year term of supervised release. The court also ordered Marks to participate in a substance-abuse treatment program while imprisoned.

Marks was released on July 20, 2016. Less than six weeks later, he first violated the terms of his supervised release when he was arrested for theft, criminal mischief, littering, and possession of drug paraphernalia—to all of which he pleaded "no contest." Marks remained in custody for these offenses until September 3, 2016. Upon his release, he failed to timely report his arrest to his probation officer. That was Marks's second violation of the terms of his supervised release.

His third violation followed two days later, on September 5, 2016, when Marks committed two more thefts. In that day's first theft, Marks and another man, later identified as Troy Martin, entered a "Circle K" convenience store, picked up a case of beer, and took the beer without paying.

The second theft occurred later that day, when Marks and Martin went to a Dollar General store. Marks entered the store and indicated that he wished to buy cigarettes. Martin remained outside. After the store's clerk handed Marks a ten-pack carton of cigarettes, Martin entered the store. A dispute ensued. During the dispute, Marks dropped a pack from the carton

onto the floor. As he bent down to pick it up, Martin grabbed the nine packs remaining in the carton and ran out of the store. Marks then followed with the pack that he had dropped.

Later that day, a police officer spotted Marks near an apartment building about a mile and a half from the Dollar General store. The officer questioned Marks about the theft of cigarettes. When the officer placed his hand on Marks's arm, Marks pushed it away and started running. The officer pursued Marks on foot and, with the help of other officers, apprehended him after a short chase. For the theft from the Dollar General store, Marks subsequently pleaded guilty in Ohio state court to felony theft. Charges regarding the theft from the Circle K were dropped.

The federal revocation proceeding followed. At the second of two revocation hearings, the district court heard testimony from witnesses, Marks's allocution, and the arguments of counsel. Defense counsel contended that Marks's "drug and alcohol abuse" and "mental health history" had played a significant role in his conduct on supervised release. He opined that "Mr. Marks, instead of using the medication that was prescribed to him, started using illicit drugs to deal with some of the issues that have plagued Mr. Marks most of his life." Defense counsel also informed the court that Marks wanted to "go into a residential drug treatment program" to obtain the "treatment that he believes that [he] so sorely needs."

Marks echoed his attorney's remarks. He stated: "I always used drugs and alcohol, you know, and any time that I committed my crimes, Your Honor, I always was under the influence of alcohol and drugs. And I just really want to get some help and try to get my life back on track." Marks also explained that he had fled from the officers investigating the Dollar General theft partly because he "was high and drinking." He concluded by reiterating, "I just want to have an opportunity to change my life."

When Marks finished his allocution, the district court expressed doubt that he would benefit from additional supervised release because the Presentence Report (PSR) indicated that he had done poorly in his prerelease program and shown little interest in rehabilitation. In particular, the court noted that the PSR reflected the following facts: Marks had exhibited problems following the rules of the prerelease program. He appeared to have issues with authority figures. Three times in July 2016, he had shown up late to counseling appointments. His counselors wrote that he appeared to have significant issues with chemical dependency, which he refused to address, and that he was very resistant to making any positive changes in his life. The administrators of the halfway house where Marks had stayed considered his prognosis poor and deemed him likely to recidivate. They concluded that he was simply going through the motions of the prerelease program. In the court's opinion, subsequent events had validated these assessments.

The district court then explained the reasons for the sentence that it was about to pronounce:

> We have a defendant for all those reasons who cannot be supervised, who despite whatever efforts we have made or have been made, in a matter of weeks and days returns to criminal conduct at every turn, and has refused to confront the issues that bring him here, and makes him a high risk for continued recidivism.

> The need for the sentence imposed, and I've described in some respects the nature and circumstances of his record, of his arrests and his criminal conduct here that brings him here as set forth in the report.

> The need for the sentence imposed here is just punishment, adequate deterrence, protect the public, reflect the seriousness of the offense and improve the offender's conduct and condition.

> This is a defendant who rehabilitation is not likely, unfortunately, as borne out in the reports, referencing his time in the halfway house, he's made no

progress or little progress, in fact, refused to acknowledge the issues of his drugs and alcohol abuse.

So, therefore, we have little alternative but to remove him from society for as long of a period of time as can be removed.

Accordingly, the court varied upward from the Guidelines range of 8 to 14 months' imprisonment. It imposed the statutory-maximum term of imprisonment—36 months—to run consecutively to his State sentence, with no term of supervised release to follow.

**B.      Procedural background**

On January 20, 2017, Marks appeared before the district court pursuant to a notice to appear for a revocation proceeding. He admitted to the three violations described above. Ten days later, the court imposed the sentence at issue here. This timely appeal followed.

## II.  ANALYSIS

On appeal, Marks argues that his sentence is both procedurally and substantively unreasonable. His theory of procedural error is that the district court did not adequately consider or explain its reasons for rejecting his arguments that he needed treatment for substance abuse and mental illness. The gist of his challenge to the substantive reasonableness of his sentence is that the court imposed a term of imprisonment nearly three times longer than the longest term suggested by the Guidelines and did so in response to relatively minor offenses for which the State of Ohio did not see fit to incarcerate him. For the reasons set forth below, we conclude that the circumstances of this case render both of his arguments meritless.

**A.      Marks's procedural-reasonableness challenge**

In the present case, after the district court pronounced Marks's sentence, defense counsel lodged a single objection:

> Your Honor, we would object to the upward variance that the court has imposed against Mr. Marks, in large measure it appears that Your Honor is motivated by Mr. Marks'[s] criminal history. Mr. Marks's criminal history has already been taken into consideration by the sentencing guidelines or the probation guidelines as he stands at a Criminal History Category VI.
>
> So the revocation range of 8 to 14 months takes into consideration the fact that Mr. Marks has the highest criminal history that a person could have, so based upon that, we would object to the court's upward variance.

Counsel's objection focused solely on the district court's use of Marks's criminal history in fashioning his sentence. It did not mention the procedural issue raised on appeal—whether the court adequately considered Marks's need for treatment. Accordingly, counsel's statements did not adequately apprise the court of the current basis for the objection or afford it an opportunity to address the purported error. We therefore review Marks's procedural objection under the plain-error standard, which is less exacting than the normal abuse-of-discretion standard. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) ("A party who neglects to make an objection, even after being given 'an opportunity' to do so, forfeits the argument and may obtain relief on appeal only if the error is 'plain' and 'affects substantial rights.'" (quoting Fed. R. Crim. P. 52(b))); *see also United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010) ("Where a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error." (citing *Vonner*, 516 F.3d at 385–86)).

The record shows that the district court fully considered Marks's arguments regarding his need for treatment and adequately explained its reasons for rejecting them. At several points, the court specifically responded to defense counsel's arguments regarding Marks's need for treatment, each time expressing doubt that Marks intended to cooperate with further treatment efforts. It particularly noted that Marks, during his time in the prerelease program just a few

months earlier, had consistently refused to acknowledge his substance abuse, shown up late to counseling appointments, and resisted counselors' efforts to help him.

The district court thus adequately explained why it rejected Marks's request for further treatment and concluded that his incarceration would better serve the public interest. It expressly considered various § 3553(a) factors and did not plainly err in weighing them. To the contrary, the record shows that the court engaged in a reasoned and transparent decision-making process. This leads us to the conclusion that there was no error, much less plain error, in how the district court dealt with the procedural aspects of Marks's sentence.

**B.      Marks's substantive-reasonableness challenge**

We now turn to Marks's argument that his sentence is substantively unreasonable. Marks contends that his sentence is substantively unreasonable because (1) it is nearly three times longer than the longest sentence suggested by the Guidelines, (2) the offenses underlying the revocation of his supervised release were "low-level" and "non-violent," and (3) the State of Ohio did not impose a term of imprisonment for those offenses.

We review the substantive reasonableness of a sentence under the abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). The § 3553(a) factors, which the court "shall" consider, include "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence "to reflect the seriousness of the offense," "promote respect for the

law," "provide just punishment," "afford adequate deterrence to criminal conduct," and "protect the public." 18 U.S.C. § 3553(a).

"In reviewing for substantive reasonableness, we must 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (quoting *Gall*, 552 U.S. at 51). Although "we may apply a rebuttable presumption of substantive reasonableness" to sentences "within the Guidelines," "[w]e may not . . . apply a presumption of unreasonableness to outside-Guidelines sentences." *Id.* We must instead "give 'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *Id.* (quoting *Gall*, 552 U.S. at 51). "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." *Gall*, 552 U.S. at 51.

Marks's basic argument is that his sentence is substantively unreasonable because it exceeds the high end of his Guidelines range of 8 to 14 months by a factor of almost three. But this fact must be viewed in context. A relevant factor under § 3553(a)—and one that the district court expressly considered—is the need for the sentence to reflect the seriousness of the offense. That "offense" is not the conduct that prompted the revocation, but the offense for which the defendant was convicted in the first place. *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011). In this case, the original offense was a serious one that reflected a troubling pattern of recidivism, with Marks participating in a bank robbery just one day after he was released from confinement for a prior offense.

As the Supreme Court recognized in rejecting the use of a rigid mathematical formula to determine the reasonableness of sentences, "deviations from the Guidelines range will always appear more extreme—in percentage terms—when the range itself is low." *Gall*, 552 U.S. at

47–48. The district court here was confronted with a defendant's clear pattern of recidivistic behavior that repeatedly occurred immediately upon his release. Marks committed the thefts that violated the terms of his supervised release in the present case only two days after his most recent release from confinement. At sentencing, Marks's main argument for leniency was his need for treatment and support related to mental illness and substance addiction. But, as the district court noted, Marks had been receiving precisely that assistance when he reoffended, and his record did not evince any real commitment to the treatment program. In light of Marks's recidivistic behavior across many years and following repeated terms of incarceration, we fail to see how 36 more months imposed now is unreasonable. This is especially true given that subsequent events have shown the court that Marks's original sentence was insufficient to deter him from future criminal conduct.

Turning to Marks's remaining arguments, we find them unpersuasive. Marks emphasizes that his new offenses were nonviolent and did not result in his imprisonment by the State. No doubt these facts weigh in favor of leniency. But they do not necessarily outweigh other salient facts, such as the haste with which Marks repeatedly reoffended—a fact on which the district court understandably placed great weight. *See Bolds*, 511 F.3d at 581 ("[W]e must give 'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." (quoting *Gall*, 552 U.S. at 51)).

Marks also contrasts his sentence with those that this court approved of in *United States v. Chowdhury*, 438 F. App'x 472, 477–78 (6th Cir. 2011), and *Johnson*, 640 F.3d at 209, in which the district courts imposed smaller upward variances for offenses that Marks characterizes as more serious than his own. But those cases, as affirmances, do not establish a ceiling above

which a court cannot upwardly vary. Nor do they imply that this court would have disapproved of harsher sentences in those cases.

In addition, Marks selectively ignores facts that obscure the distinctions that he attempts to draw. For instance, he implies that his own violations were less serious than the defendant's in *Chowdhury* (where this court approved a three-month upward variance) because that defendant "actually fled the district" and "failed to appear for his revocation hearing." But Marks ignores the fact that he himself fled from officers investigating his most recent offense. That he did not evade capture long enough to leave the district is hardly a distinguishing fact. Similarly, Marks points to *Johnson* as an example of a case in which we approved of a smaller (15-month) upward departure for a more serious violation. But he ignores the fact that the upward departure in *Johnson*, like the upward variance at issue here, placed the defendant's sentence at the statutory maximum. 640 F.3d at 200. *Johnson* therefore supports the government's position as much as it does his own.

In sum, we conclude that Marks's sentence is not substantively unreasonable. The district court therefore did not abuse its discretion in imposing the 36-month term of imprisonment.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.