NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0417n.06

No. 08-2428

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,    )
    )
    Plaintiff-Appellee,    )
    )
    v.    )    ON APPEAL FROM THE UNITED
    )    STATES DISTRICT COURT FOR
JOEL EARL WILLIAMS,    )    THE WESTERN DISTRICT OF
    )    MICHIGAN
    Defendant-Appellant.    )
    )
    )    OPINION

Before: COLE and ROGERS, Circuit Judges; and GRAHAM, District Judge.[*]

GRAHAM, District Judge. Defendant-Appellee Joel Earl Williams (hereinafter "the defendant") appeals the judgment of the district court entered on November 3, 2008, revoking his supervised release and imposing a term of incarceration of twelve months, to be followed by a new term of supervised release of sixty months. For the following reasons, we AFFIRM the judgment of the district court.

## I. BACKGROUND

On May 3, 2004, defendant pleaded guilty to an indictment charging him with one count of the attempted manufacture of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). (J.A. 1-9) According to the presentence investigation report, the application of the United States Sentencing Guidelines Manual ("U.S.S.G.") to defendant's case

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

resulted in a total offense level of 29, Criminal History Category IV, with a range of 121 to 151 months. (Dist. Ct. Doc. 26, 8/26/04, p. 14) On August 16, 2004, defendant was sentenced to a term of one hundred months incarceration, to be followed by a five-year term of supervised release. (J.A. 10-13) The record does not disclose the district court's rationale for imposing a sentence outside the Guidelines sentencing range. Defendant pursued an appeal from his conviction and sentence. On March 22, 2005, defendant's sentence was vacated and the case was remanded for re-sentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). (Dist. Ct. Doc. 31, 3/25/05)

On December 23, 2005, the district court entered an amended judgment imposing a term of incarceration of sixty months, to be followed by a five-year term of supervised release. (Dist. Ct. Doc. 32, 12/23/05, pp. 1-2) The district court recommended to the Bureau of Prisons that the defendant receive intensive drug abuse therapy and mental health counseling while incarcerated. (Doc. 32, p. 2) The specified conditions of supervision prohibited the defendant from committing another federal, state or local crime, unlawfully possessing and using a controlled substance, and associating with convicted felons without the permission of his probation officer. (Doc. 32, p. 3) The conditions of release also required the defendant to refrain from the use of alcohol. (Doc. 32, pp. 3-4)

On September 25, 2008, defendant appeared before the district court for an impact hearing, at which the court cautioned defendant about adhering to the terms of his supervised release. (Dist. Ct. Doc. 35, 9/25/08; Doc. 52, 11/19/08, p. 33) On October 2, 2008,

2

the probation officer submitted a petition for a warrant to the court, citing alleged violations by the defendant of conditions of his supervised release. (Dist. Ct. Doc. 37, 10/2/08) Violation Number 1 concerned defendant's alleged commission of a state crime, based on his receipt on September 30, 2008, of a misdemeanor citation for operating a motor vehicle in violation of his license restrictions and M.C.L. § 257.312. (Doc. 37, p. 2) Violation Number 2 alleged that defendant violated the prohibitions concerning alcohol use and the unlawful possession of controlled substances. This violation alleged that during the traffic stop on September 30, 2008, police officers searched defendant's vehicle and found a six-pack of beer, a six-pack of Mike's Hard Lemonade, a small quantity of pseudoephedrine pills and an open container of cranberry juice containing Amoxicillin and pseudoephedrine pills. (Doc. 37, p. 2) Violation Number 3 charged that defendant had associated with a convicted felon, based on the defendant's admission to his probation officer that he had been associating with Carrie Crockett, a convicted felon, and that he was en route to Ms. Crockett's residence when he was stopped by the police on September 30, 2008. (Doc. 37, p. 2.) The district court ordered that a summons be issued for a violation hearing. (Doc. 37, p. 3)

On October 21, 2008, the probation officer submitted an amended petition to the court charging defendant with three additional violations. (Dist. Ct. Doc. 43, 10/21/08) Violations 4, 5 and 6 alleged respectively that defendant violated the prohibitions against committing another crime by possessing methamphetamine in violation of M.C.L. § 333.7403(2)(b)(i), a felony punishable by imprisonment for up to ten years; the possession of controlled substances; and the use of controlled

substances. The report stated that a random urinalysis sample submitted by defendant on October 15, 2008, was submitted for laboratory analysis and tested positive for amphetamine and methamphetamine. (Doc. 43, p. 3)

Since Violation 4 alleged the commission of an offense punishable by a term of imprisonment exceeding one year, it was classified under the Guidelines as a Grade B violation. *See* U.S.S.G. § 7B1.1(a)(2) (2007). Because defendant was in Criminal History Category IV, this violation carried an advisory guideline sentencing range of twelve to eighteen months. *See* U.S.S.G. § 7B1.4(a) (2007). This range applied even if the other alleged violations were of a lesser grade. *See* U.S.S.G. § 7B1.1(b) (2007)("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

By order filed on October 22, 2008, the magistrate judge found that there was no probable cause to refer Violations 2 and 3 for a final hearing, but that probable cause existed to bind defendant over to the district judge for a final hearing on Violations 1, 4, 5 and 6. (Dist. Ct. Doc. 46, 10/22/08)

The district court held a final hearing on the amended violation petition on October 27, 2008. (Dist. Ct. Doc. 52, Transcript of Hearing, filed 11/19/08) Matthew Kakabeeke, the supervisor of Nicholas Bobo, the probation officer assigned to supervise the defendant since his release from incarceration on August 5, 2008, was called as a witness by the government. Mr. Kakabeeke testified based upon his review of the defendant's file.

4

(Tr. p. 4)  Mr. Kakabeeke stated that although defendant had some problems with unemployment, no noncompliance issues were brought to Mr. Bobo's attention prior to the traffic stop on September 30, 2008.  (Tr. pp. 4, 9-10)  Upon being stopped on September 30th, defendant informed the officers that he was on federal supervision, and that Mr. Bobo was his supervising officer.  (Tr. p. 11)

Upon the commencement of his supervised release, defendant was enrolled in Phase 1 drug testing, and was directed to submit to random urinalysis at the Kalamazoo Probation Enhancement Program ("KPEP").  (Tr. p. 4)  He was not enrolled in drug counseling at that time.  (Tr. p. 10)  Under the terms of the contract between the probation office and Kroll Laboratories, samples were submitted for an initial screening, and if a positive result was obtained, the sample was tested again by gas chromatography/mass spectrometry, which was considered the "gold standard" for this type of testing.  (Tr. p. 12)  The confirmation level was set at 250 nanograms per milliliter, which was a relatively high threshold to provide a margin of error.  (Tr. pp. 7-8, 12)

Mr. Kakabeeke further testified that defendant submitted a sample on October 15, 2008, for a full spectrum screening.  (Tr. p. 5)  The sample tested positive for amphetamine and methamphetamine. (Tr. p. 5)  Mr. Kakabeeke noted that defendant's original conviction involved methamphetamine, and that it was not uncommon for methamphetamine users to relapse.  (Tr. pp. 5-6)  Mr. Kakabeeke further testified that in the two-month period since the commencement of defendant's supervised release, defendant would have submitted between six to eight or ten samples, and that the test on October 15th was his only positive test.  (Tr. p. 6)

The laboratory report did not give a quantitative value

concerning the concentration of methamphetamine in defendant's system; such a report had to be specially requested. (Tr. pp. 7, 13) The test revealed the presence of D-methamphetamine, 96 percent. The report stated that the specimen was diluted, indicating that the defendant was trying to flush his system prior to providing the sample. (Tr. pp. 7-8) Even with the dilution, the sample tested above the confirmation level of 250 nanograms per milliliter. (Tr. p. 12) Mr. Kakabeeke testified that there was no question about the test's being positive for methamphetamine, and that even if defendant had used a small amount of methamphetamine, that would still constitute a violation. (Tr. pp. 12-13)

Defendant was placed under oath, and admitted receiving the misdemeanor citation on September 30, 2008, for operating a motor vehicle in violation of his license restrictions. (Tr. pp. 16-18) Defendant stated that he was not permitted to drive from 11:00 p.m. to 7:00 a.m. due to his involvement in a traffic accident. (Tr. p. 19) Defendant stated that he left his house at approximately 9:30 and went to South Haven. (Tr. p. 18) He stated that he should have been able to arrive at South Haven by 11:00, but that he missed his exit, had to turn around, then got lost in South Haven, and as a result, he was still driving around when it was almost midnight. (Tr. p. 18) Defendant acknowledged that it was a good forty-five minute drive from his home in Lawton to South Haven. (Tr. 19) Defendant further stated that he hoped to have a job in the South Haven area with B & L Construction the following day, and that it would have been easier for him to get to the job site from where he was going to stay. (Tr. pp. 20-21) In his statement to the court regarding the appropriate sentence, defense counsel stated that defendant had planned to stay with an acquaintance in

South Haven that night so that he would be closer to the job site the next day, but that due to running errands and getting lost, he was found by the police driving past 11:00 p.m. (Tr. p. 23)

The district court found that violations 1, 4, 5, and 6 had been proved by a preponderance of the evidence. (Tr. pp. 21-23) Speaking on defendant's behalf, defense counsel noted that until the instant violations, defendant had been compliant with the terms of his supervised release, and his previous drug tests had been negative. (Tr. pp. 23-24) Counsel requested that the court exercise leniency in imposing whatever sentence the court deemed appropriate. (Tr. p. 24) Defendant stated that at the time of the positive test, he was ill and had been taking more than the usual amount of pseudoephedrine tablets, and that he was surprised by the positive test result, because he shouldn't have been "dirty." (Tr. p. 25)

Mr. Kakabeeke recommended a sentence of twelve months incarceration at the low end of the guideline range. (Tr. p. 30) The government argued that defendant's statements before the court indicated that he did not accept responsibility for the violations. (Tr. pp. 30-31) The government further argued that the statutory sentencing factors of promoting respect for the law, *see* 18 U.S.C. §3553(a)(2)(A), and deterrence, *see* 18 U.S.C. §3553(a)(2)(B), warranted a sentence of eighteen months at the high end of the guideline range. (Tr. p 32)

In imposing sentence, the district court stated that the impact conference on September 25, 2008, was a "disaster" and "had no effect whatever upon Mr. Williams." (Tr. p. 32) The court stated:

7

[L]ess than a week later on the 30th we're out thinking we can get from Lawton to South Haven and back in an hour and a half, and we don't make it. It takes us two and a half, almost three hours when we're stopped in violation of restricted license. And then we test positive for methamphetamine, the exact same drug that got us here in the first place in August of '04 for sentencing, and now suddenly I didn't feel well that night I was driving on the 30th. I was sick. He surely wasn't sick here on the 25th of September when he appeared.

And he says, I don't know how that happened. I guess I must have caught something here. Well, he did catch something. I'm sure that Mr. Williams caught what he's had for some time, and that is a manifest disregard for the law.

The court lectured to him on the 25th of September about keeping good friends; staying away from people who were bad influences; not running with just anybody; making good, careful choices of friends; and making sure that one stayed miles away from anything having to do with drugs. When we're sick, we go to the doctor, get a prescription, or we take something over the counter that will help us. And if we take something over the counter, it won't come out in these Kroll drug tests. It will not have that high a level....

(Tr. pp. 32-33)

The district court imposed a sentence of 12 months incarceration, to be followed by a new term of supervised release of 60 months. (Dist. Ct. Doc. 50, 11/3/08, pp. 1, 3) The court recommended to the Bureau of Prisons that the defendant receive drug abuse counseling and therapy and mental health treatment while incarcerated. (Doc. 50, p. 2) The conditions of the new term of supervised release required the defendant to participate in a substance abuse testing and treatment program, to refrain from the use and possession of alcoholic beverages, to refrain from frequenting bars and associating with persons using or possessing alcohol or controlled substances, and to avoid associating with

8

felons. (Doc. 50, p. 4)

The court also ordered that the defendant serve the first six months of his term of supervised release at KPEP, and that he have a curfew of 10:00 p.m. to 6:00 a.m., unless otherwise approved by the probation officer, "because I don't believe he's trustworthy at this point." (Tr. p. 34) The district court further stated:

> We're going to address this problem right now and we're going to get Mr. Williams back where he should be at this time. He's 25 years old, and it's time we get back to adult behavior. No excuses, no catching things, nothing of this nature to go on.

The court concluded that the defendant would "come back for an impact hearing with this Court again when he is released from the Federal Bureau of Prisons and we'll see if we've got a little different attitude toward what's in front of us." (Tr. p. 34) Defendant filed the instant appeal from the district court's judgment and sentence. (Dist. Ct. Doc. 51, 11/4/08)

## II. ANALYSIS

A. Standard of Review

"We review a district court's decision to revoke supervised release for abuse of discretion, *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000), giving fresh review to its legal conclusions, *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000), and clear-error review to its fact findings, *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006)." *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009). This court reviews sentences imposed following the revocation of a term of supervised release under the same abuse of discretion standard

applied to sentences imposed following conviction. *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007). This means that a sentence will be overturned only if it is procedurally or substantively unreasonable. *United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008).

Defendant argues that the sentence of twelve months incarceration imposed by the district court was both procedurally and substantively unreasonable. In regard to defendant's argument that the trial court did not adequately consider and failed to choose the option of drug treatment in lieu of revocation, the parties suggest that the plain error standard of review may apply due to the defendant's failure to request drug treatment at the revocation hearing or to challenge the trial court's alleged failure to explain its reasons for choosing incarceration over treatment. *See* Fed.R.Crim.P. 51(b)("A party may preserve a claim of error by informing the court–when the court ruling or order is made or sought–of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.").

However, Rule 51(b) further states, "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Fed.R.Crim.P. 51(b). To ensure that the parties are fairly given the opportunity to object to the sentence, this court established the rule in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), that district courts, after imposing sentence and before adjourning, must ask the parties whether they have any further objections to the sentence just pronounced. 371 F.3d at 872. If the district

10

court fails to do so, the parties do not forfeit their objections and are not required to demonstrate plain error on appeal. *Id*. In this case, the district court did not invite any additional comments from the parties after imposing sentence. In light of this lack of compliance with the *Bostic* rule, defendant's failure to raise an argument as an objection below does not trigger plain-error review. *See United States v. Gapinski*, 561 F.3d 467, 473-74 (6th Cir. 2009).

B. Procedural reasonableness

A sentence may be procedurally unreasonable if it entails a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 597 (2007).

For a sentence to be procedurally reasonable, the district court must: (1) correctly calculate the applicable sentencing range and consider the policy statements in Chapter Seven of the Guidelines; (2) give both parties the opportunity to argue for whatever sentence they deem appropriate, and then consider all of the § 3553(a) sentencing factors before making an individualized assessment based on the facts presented and those statutory factors; and (3) adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Bolds*, 511 F.3d at 579-80.

11

A district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). In determining whether to revoke a term of supervised release, the district court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). 18 U.S.C. § 3583(e).[1] The factors relevant in this case include the nature and circumstances of the offense and the history and characteristics of the defendant; the need to deter criminal conduct, to protect the public, and to provide defendant with appropriate treatment; any guideline range for sentencing, guideline policy statements, and the avoidance of unwarranted disparities.

The district court is not required to engage in a "ritual incantation" of the sentencing factors, *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005), or to explicitly refer to each factor in pronouncing sentence, *United States v. Smith*, 505 F.3d 463, 467-68 (6th Cir. 2007); *see also United States v. Jeross*, 521 F.3d 562, 583 (6th Cir. 2008)("A district court need not recite [the] § 3553(a) factors, nor engage in the ritual incantation of the factors in order for the appellate court to affirm a sentence." (citations and internal quotation marks omitted)). "This court has made it clear that a district court need not explain its reasons for rejecting each argument made by a defendant." *United States v.*

---

[1]Although § 3583(e) omits § 3553(a)(2)(A), the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, from the list of factors the court must consider when imposing a supervised release revocation sentence, consideration of that factor in revoking supervised release does not constitute reversible error. *United States v. Lewis*, 498 F.3d 393, 399-400 (6th Cir. 2007).

*Smith*, 510 F.3d 603, 608 (6th Cir. 2007). The record is sufficient if "the district court's explanation of the sentence makes it clear that it considered the required factors." *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998)

In regard to the violations involving the positive test for controlled substances, defendant argues that the record fails to show that the court considered drug treatment or some other sanction less than incarceration. Generally, when a defendant possesses a controlled substance contrary to the conditions of his supervised release, the law provides that "the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment[.]" 18 U.S.C. § 3583(g); U.S.S.G. § 7B1.4 cmt. n.5 (2007). The use of a controlled substance constitutes possession under § 3583(g). *Crace*, 207 F.3d at 836.

However, § 3583 provides for an exception to revocation: "The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test." 18 U.S.C. § 3583(d). Similarly, Chapter Seven of the Guidelines states: "In the case of a defendant who fails a drug test, the court shall consider whether the availability of appropriate substance abuse programs, or a defendant's current or past participation in such programs, warrants an exception from the requirement of mandatory revocation and imprisonment under 18 U.S.C. §§ 3565(b) and 3583(g)." U.S.S.G. § 7B1.4 cmt. n.6 (2007). This exception to revocation essentially

13

restores to the district court the discretion whether or not to revoke the defendant's supervised release. *Crace*, 207 F.3d at 837.

"[W]e do not require magic words in the record of the sentencing hearing indicating that substance abuse treatment was considered in order to uphold the district court's prison sentence." *Crace*, 207 F.3d at 836. The record in this case is sufficient to permit the conclusion that the district court considered and rejected substance abuse treatment as an alternative to incarceration. The probation officer testified during the revocation hearing that defendant was enrolled in a drug testing program at the time of the violations, but not in a drug treatment program. Thus, the court was aware of the fact that defendant was not currently in drug treatment.

The district court noted that defendant had tested positive for methamphetamine, the same controlled substance involved in his offense of conviction. The district court commented on defendant's disclaimer of any knowledge of how he could have tested positive for methamphetamine. (Tr. p. 33) *See Crace*, 207 F.3d at 836 n. 1 (noting court's concern with defendant's claim that he didn't know how the drugs got into his system in affirming judgment revoking supervised release). The court referred to defendant's "manifest disregard for the law[,]" (Tr. p. 33) which relates to the need for the sentence to promote respect for the law. *See* § 3553(a)(2)(A). The court recalled its admonitions to defendant during the impact hearing about keeping good friends, avoiding people who are bad influences, and staying away from drugs, and commented that the impact hearing attended by defendant a week prior to the traffic stop was a "disaster" which had "no effect whatever on Mr.

14

Williams." (Tr. p. 32) These statements indicate that the court had concluded, upon considering § 3553(a)(2)(B), that counseling alone was not enough to deter defendant from using drugs, and that a sentence of incarceration was warranted.

The district court obviously considered defendant's need for drug treatment pursuant to 18 U.S.C. §3553(a)(2)(D), because the court recommended to the Bureau of Prisons that the defendant receive drug abuse counseling and therapy and mental health treatment while incarcerated. The court also specified that defendant participate in a substance abuse testing and treatment program as a condition of his new term of supervised release. The court further ordered that defendant serve the first six months of his new term of supervised release at a community treatment facility "because I don't believe he's trustworthy at this point." (Tr. p. 34) This statement indicates that the court believed that the defendant required a structured environment to assist him in drug rehabilitation and that the court had rejected the option of simply continuing defendant on supervision while he attended drug therapy. The district court adequately explained its reasoning for imposing a term of incarceration rather than ordering drug treatment under the § 3583(d) exception.

Defendant also argues that the revocation proceeding was procedurally deficient because the laboratory analysis relied on by the district court did not include a quantitative analysis of the amount of drugs in the defendant's system. The gist of defendant's argument is that the violation would be less serious if it were shown that he ingested only a small amount of controlled substances. However, the conditions of defendant's supervised release required the defendant to "refrain from *any* unlawful use of

a controlled substance." (Doc. 50, Amended Judgment, 11/3/08, p. 3)(Emphasis supplied). Thus, the unlawful use of even a small amount of a controlled substance would have constituted a violation. In addition, a quantitative analysis in this case would have been of little assistance to the court in determining how much amphetamine and methamphetamine defendant had ingested, because the laboratory report stated that the sample was diluted, suggesting that the defendant had attempted to flush the drugs out of his system prior to submitting the urine sample. The district court did not err in relying on a laboratory report which lacked more precise quantitative findings.

As to the traffic citation violation, defendant argues that the trial court misunderstood the factual circumstances of that violation. The district court, in describing defendant's conduct on September 30th, noted that "we're out thinking we can get from Lawton to South Haven and back in an hour and a half, and we don't make it. It takes us two and a half, almost three hours when we're stopped in violation of the restricted license." (Tr. p. 32) However, defendant stated that he had gone to South Haven because "it was gonna be easier for me to get to that job site from her—from where I was gonna stay, you know, the next morning." (Tr. p. 21) By way of further explanation, defense counsel informed the court that defendant had intended to spend the night with an acquaintance in South Haven so that he would be closer to a job site the next day. (Tr. p. 23). Defendant argues that the district court's misunderstanding of his plans to spend the night in South Haven is a procedural error requiring re-sentencing.

"A sentence is procedurally unreasonable if a district court commits a *significant* procedural error[.]" *United States v.*

16

*Carson*, 560 F.3d 566, 585 (6th Cir. 2009)(emphasis supplied). Not all sentencing errors are prejudicial. To establish harmless error at sentencing, "the government must demonstrate to this Court with certainty that the error at sentencing did not 'cause[] the defendant to receive a more severe sentence.'" *United States v. Johnson*, 467 F.3d 559, 564 (6th Cir. 2006)(quoting *United States v. Oliver*, 397 F.3d 369, 379 (6th Cir. 2005)(internal citation omitted)).

In pronouncing sentence, the district court apparently recalled his exchange with the defendant concerning the time required to travel from defendant's home to South Haven. The court's comments suggest that the court felt that the defendant exercised poor judgment in leaving his house at 9:30 p.m. to make the forty-five-minute drive to South Haven, knowing that he could barely make the round trip before the 11:00 p.m. curfew. It may be that the court simply did not believe defendant's claim that he intended to stay in South Haven, although the court did not expressly so state on the record.

Even assuming that the district court's view of the facts in regard to defendant's travel plans was erroneous, this error was clearly not prejudicial. The actual commission of the traffic violation did not hinge in any way on whether or not defendant planned on returning to his home that night. Defendant admitted that he was driving around close to midnight, in violation of his license restriction, and that he received a citation for that violation. Defendant acknowledged that "it was almost midnight and, I mean, I was guilty of being [out] after 11:00. I should have probably parked and got a taxi or something like that. I

17

shouldn't have drove [sic]." (Tr. p. 18) The scenario that defendant was planning on spending the night in South Haven, but was still driving around over an hour and a half after he should have arrived at his final destination in South Haven, provides nothing more, and possibly less, in the way of mitigation than the round trip referred to by the district court. In addition, the sentence imposed did not rest on this violation alone, but also on the positive drug test. In this case, we can be certain that any misunderstanding on the part of the district court concerning the defendant's travel plans preceding the September 30th violation was harmless and did not cause defendant to receive a more severe sentence.

The district court committed no significant procedural error in revoking defendant's supervised release and imposing sentence.

C. Substantive reasonableness

Since we have found that the district court's sentence is procedurally sound, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] ... tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 128 S.Ct. at 597. A sentence is substantively unreasonable if "the district court selected the sentence arbitrarily, based the sentence on impermissible factors, failed to consider pertinent §3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *Smith*, 510 F.3d at 609. This court applies a presumption of substantive reasonableness in reviewing sentences that are within the range of

the Guidelines policy statements on revocation. *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008).

Defendant argues that the sentence of incarceration of twelve months for a single positive drug test, even combined with the traffic violation, was substantively unreasonable. The sentence of twelve months imposed by the court was a sentence at the bottom of the advisory guideline range, and thus the sentence was presumptively reasonable.

As discussed above, the district court appropriately considered the defendant's need for drug abuse treatment. The court heard evidence that it was not uncommon for methamphetamine users to relapse. The court commented that defendant was not trustworthy, and apparently concluded that defendant required the more structured environment provided by incarceration and the community treatment facility to assist him in achieving his drug treatment goals. This conclusion was reasonable in light of defendant's failure to admit his methamphetamine use or to accept responsibility for the positive drug test, his "manifest disregard for the law" in both ignoring the restriction on his driver's license and possessing methamphetamine, a felony, despite the court's admonitions at the impact hearing held within a week of the traffic violation and within three weeks of the positive drug test.

Although the positive drug test was the first positive test after a series of negative tests over a two-month period, the positive test occurred within three months of the commencement of defendant's term of supervised release. The test was positive for methamphetamine, the same controlled substance involved in the offense of conviction. Although the violation involved one

19

positive test, this was sufficient to constitute a violation of defendant's supervised release, which prohibited "any unlawful use of a controlled substance." (Doc. No. 32, p. 3). *See Polihonki*, 543 F.3d at 325-26 (affirming sentence of thirteen months incarceration following revocation of supervised release for two positive tests for alcohol, where conditions prohibited defendant "from any use of alcohol"). In addition, defendant was also found to have committed two violations of state law, specifically, his citation for driving in violation of his license restriction, and possession of methamphetamine, a felony violation of state law. The fact that defendant was found guilty of multiple violations of his conditions of supervised release "also weighs against application of the exception to § 3583(g)." *United States v. Pratt*, 297 Fed.Appx. 475, 478 (6th Cir. 2008).

The district court's explanation of the sentence provides a reasoned basis for the sentence imposed. Defendant has not rebutted the presumption of reasonableness attached to the sentence of twelve months incarceration, which fell within the advisory Guidelines range, nor has he met his burden of demonstrating that the sentence imposed represents an abuse of discretion under the totality of the circumstances. We therefore reject defendant's challenge based on substantive reasonableness.

## III. Conclusion

For the above reasons, we AFFIRM the revocation of defendant's supervised release and the imposition of a term of incarceration, to be followed by an additional term of supervised release.

20