NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0519n.06

No. 21-3161

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 16, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| COREY SUGGS, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

Before: DAUGHTREY, COLE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge**.  Corey Suggs pleaded guilty to one count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).  The district court varied upwards from the Sentencing Guidelines and imposed a sentence of 40-months' imprisonment.  Suggs appeals his sentence, contending that it is both procedurally and substantively unreasonable.  We affirm Suggs' sentence for the reasons set forth below.

I.

On May 16, 2020, Suggs' ten-year-old son was staying with his mother, Nikki Fitzgerald, at a residence on Pondview Avenue in Akron, Ohio.  The boy called his father and asked Suggs to pick him up.  According to Fitzgerald, their son viewed a sexually explicit video of her and her boyfriend on her phone and told Suggs what he had seen.  Later that day, Suggs drove to the residence with Tierra Bryant.  Once Suggs arrived at the Pondview Avenue residence, he exited

his vehicle and began playfully wrestling with his son in the front yard. Bryant remained in the vehicle at all times.

Fitzgerald was intoxicated and when she saw Suggs and their son wrestling, she thought they were physically fighting. Fitzgerald and her boyfriend approached Suggs and an argument ensued. The argument escalated when Suggs told their son, "I'll shoot your mom in her fucking face." (Presentence Investigation Report, R. 12, Page ID # 79.) Fitzgerald then hit Suggs in the face with a glass bottle of beer, which shattered. At the same time, Fitzgerald's boyfriend began physically assaulting Suggs and tore off Suggs' shirt. The record does not indicate whether the son remained on the scene for the duration of the altercation. Suggs and Bryant then left the Pondview Avenue residence for approximately seven minutes before returning.

At some point, the Akron Police Department was notified of the domestic disturbance at the Pondview Avenue residence. When they arrived, the officers observed a shirtless man immediately walk towards a nearby vehicle, get in the driver's seat, and begin to drive away. As this occurred, several bystanders, including Fitzgerald, notified the police that the man, Suggs, had a firearm. The officers activated their lights and prevented Suggs' vehicle from fleeing the scene.

As the officers approached Suggs' vehicle, they informed Suggs that if he had a firearm, he needed to let them know. Suggs responded, "all right," and reached toward the driver's side door. The officers promptly detained him. Suggs told the officers that there was a firearm in the vehicle and upon searching, the officers recovered a Bersa model Thunder 380, .380 caliber pistol under the driver's seat. The pistol was loaded and had one round in the chamber.

Officers questioned Suggs, who stated that he did not intend to shoot anyone with the firearm or use it to threaten or intimidate anyone. He also maintained that he did not brandish it or use it in any way during the domestic dispute, claiming that he left the weapon in the car the

entire time.  Officers asked Bryant if Suggs left the scene to get the firearm.  Bryant responded, "Yeah, I guess you could say that."  (*Id*., Page ID # 80.)

On September 3, 2020, Suggs was charged in a two-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1), and being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2) (Count 2).

On November 3, 2020, Suggs pleaded guilty to Count 2.  In his plea agreement, the parties forecasted that Suggs' base offense level was 20.  Because Suggs accepted responsibility for his conduct, the plea agreement included a three-level reduction, anticipating his offense level to be 17.  Despite this, the parties recognized "that the advisory guideline range will be determined by the Court at the time of sentencing, after a presentence report has been prepared" and that "the Court may depart or vary from the advisory guideline range."  (Plea Agreement, R. 9, Page ID ## 32–33.)  The parties went on to note they had "no agreement about the sentencing range to be used or the sentence to be imposed."  (*Id*., Page ID # 33.)  Suggs and the government made no agreement as to his criminal history calculation.

Prior to sentencing, the U.S. Probation Department ("Probation") prepared a presentence investigation report ("PSI") that determined Suggs had nine criminal history points, corresponding to Criminal History category IV.  With Criminal History category IV and an offense level of 17, the plea agreement would impose a sentence of 37 to 46 months.

Despite the plea agreement calculating the offense level at 17, Probation undertook its own calculation, which determined Suggs' offense level was 14.  Because the offense level was below 16, Probation recommended only a two-level acceptance-of-responsibility reduction, under U.S.S.G. § 3E1.1(a), reducing Suggs' total offense level to 12.  With a Criminal History category

IV and an offense level of 12, Probation determined Suggs' advisory Guideline range was 21 to 27 months' imprisonment. Despite this lower advisory range, Probation recommended an upward variance.

On February 9, 2021, the district court sentenced Suggs. The court confirmed that Suggs and his attorney had reviewed the PSI and that they had not raised any objections to its contents. The court acknowledged that it "is required to properly calculate the advisory guidelines" and agreed with the PSI offense level of 12 and criminal history category IV. (Sentencing Tr., R. 23, Page ID ## 143–44.) Again, the court asked both parties if they objected to the court's calculation of the offense level and neither party objected. Through counsel, Suggs reiterated that "[h]e's accepted responsibility without issue, without excuses" and that "there is genuine remorse on behalf of [Suggs]." (*Id*., Page ID # 146.) Suggs' counsel also noted his mental health issues "tied to the loss of his son" and asked that Suggs be recommended for participation in a drug-treatment program. (*Id*., Page ID ## 146–47.) The government then asked the court to vary upward from the Sentencing Guidelines range and to impose a sentence within the range contemplated by the plea agreement.

After hearing arguments from both sides, the district court stated it had "carefully considered the matter and reviewed the PSI and the sentencing memoranda and the arguments of counsel," and that it agreed with Probation's recommendation to vary upward from the Sentencing Guidelines range. (*Id*., Page ID ## 149–58.) The district court sentenced Suggs to 40 months' imprisonment followed by three years of supervised release. Suggs timely appealed.

II.

We review district court sentencing determinations for reasonableness. *United States v. Nichols*, 897 F.3d 729, 736 (6th Cir. 2018). The reasonableness inquiry has both procedural and substantive components. *Gall v. United States*, 552 U.S. 38, 51 (2007). Regarding the procedural reasonableness of a sentence, the standard of review varies depending upon whether the defendant lodged an objection with the district court. If no objection was made, we review the procedural reasonableness of the sentence for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Alternatively, if an objection was made, we review the procedural reasonableness under the less deferential abuse-of-discretion standard. *See, e.g., United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020). Because Suggs objected to his sentence, we review for abuse of discretion.[1]

With the abuse-of-discretion standard of review in mind, a sentence is procedurally unreasonable "if the district court 'fail[s] to calculate (or improperly calculate[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—

---

[1] The government mistakenly argues that the procedural reasonableness of Suggs' sentence should be reviewed under the plain-error standard of review because "he did not object." (Appellee's Br. 19.) Suggs, however, did object to his sentence. After imposing its sentence, the district court asked whether there were "any objections, corrections, any arguments that have not been previously raised that I can address under *Bostic*, please?" (Sentencing Tr., R. 23, Page ID # 159.) Suggs counsel responded, "For the purposes of the record, we will preserve an objection to the Court's sentence and upward variance." (*Id*.) Contrary to the government's statement that Suggs failed to raise an objection, the record clearly demonstrates that he did. Moreover, Suggs' counsel's objection is sufficient to preserve the issue for appeal. A defendant need not specifically object to the "reasonableness" of his sentence to timely and properly preserve for appeal his challenge to the sentence. *Vonner*, 516 F.3d at 389 (citing *Rita v. United States*, 551 U.S. 338, 351 (2007)).

including an explanation for any deviation from the Guidelines range.'" *Nichols*, 897 F.3d at 737 (quoting *Gall*, 552 U.S. at 51); *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015).

In *United States v. Bolds*, 511 F.3d 568 (6th Cir. 2007), we trifurcated the procedural reasonableness analysis. "First, we must ensure that the district court 'correctly calculat[ed] the applicable Guidelines range' which is 'the starting point and initial benchmark' of its sentencing analysis." *Id.* at 579 (quoting *Gall*, 552 U.S. at 51). "In reviewing the district court's calculation of the Guidelines, we . . . review the district court's factual findings for clear error and its legal conclusions *de novo.*" *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013) (alteration in original) (quoting *Bolds*, 511 F.3d at 579). "Under the clear-error standard, we abide by the court's findings of fact unless the record 'le[aves] [us] with the definite and firm conviction that a mistake has been committed.'" *Id*. (alterations in original) (quoting *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011)).

Second, we must ensure that the district judge gave both parties an opportunity "'to argue for whatever sentence they deem appropriate' and then 'considered all of the § 3553(a) factors.'" *Bolds*, 511 F.3d at 579 (quoting *Gall*, 552 U.S. at 49–50). In evaluating the parties' arguments, the sentencing judge "'must make an individualized assessment based on the facts presented' and upon a thorough consideration of all of the § 3553(a) factors." *Id*. at 580 (quoting *Gall*, 552 U.S. at 50).

Third, we must "ensure that the district court has 'adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id*. "Reversible procedural error occurs if the sentencing judge fails to 'set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority.'" *Id*.

at 580 (quoting *Rita*, 551 U.S. at 356).  Suggs challenges the procedural reasonableness of his sentence at every step.

Suggs first argues that his sentence is based on clearly erroneous facts.  Specifically, he argues that the assertions that his son witnessed the altercation and that he left the scene and later returned with a firearm were neither proven nor admitted.  The government responds that Suggs never objected to these factual findings, which were contained in the PSI, and therefore they may be taken as true.

Here, Probation prepared and distributed a PSI that stated Suggs and his son were wrestling when the altercation began.  The PSI went on to state that at some point during the altercation, he yelled at the boy, "I'll shoot your mom in her fucking face."  (PSI, R. 12, Page ID # 79.)  Additionally, the PSI states that Suggs left the scene and returned approximately seven minutes later.  This fact was corroborated by Bryant, who stated the purpose of Suggs' departure was to retrieve the firearm.

At the sentencing hearing, the district court asked Suggs' counsel, "[D]id you go over the presentence investigation report with your client and discuss it in full?"  (Sentencing Tr., R. 23, Page ID # 143.)  He replied, "Yes, sir, I have." (*Id.*)  The court then asked Suggs, "[D]id you go over the presentence report and review it with your attorney?"  (*Id.*)  Suggs replied, "Yes, Your Honor." (*Id.*)  The court then asked if Suggs would like to make any objections related to the PSI, to which Suggs' counsel responded, "No additional objections. Thank you." (*Id.*)  After the district court sentenced Suggs, it gave him one additional chance to object.  Suggs' counsel objected only to the sentence imposed, not to the PSI.  On appeal, however, Suggs disputes the factual findings of the PSI.

At sentencing, a district court "may accept any undisputed portion of the presentence report as a finding of fact[.]" Fed. R. Crim. P. 32; *United States v. Adkins*, 429 F.3d 631, 632–33 (6th Cir. 2005); *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007) ("When a defendant fails to produce any evidence to contradict the facts set forth in the [PSI], a district court is entitled to rely on those facts when sentencing the defendant."). Suggs has offered no evidence that the findings of the PSI were erroneous, so we too accept the factual findings of the PSI.

Finally, assuming the PSI accurately represented the facts as they occurred, we are left to determine whether the district court abused its discretion when relying on such facts, resulting in procedural unreasonableness. Although the PSI does not directly state that Suggs' son witnessed the altercation, the district court reasonably inferred that he did. The boy was wrestling with Suggs when the altercation began, and Suggs threatened Fitzgerald directly in the presence of the boy. These two facts overwhelmingly suggest the son witnessed some, or all, of the altercation between Suggs, Fitzgerald, and her boyfriend. Thus, the district court was entitled to conclude that the boy witnessed the altercation.

Suggs' second factual challenge—that the government never proved he left the scene to retrieve the firearm—meets the same end. The PSI specifically states Suggs left the scene and returned with the firearm seven minutes later. Again, the court was justified in relying on this uncontested fact when crafting Suggs' sentence. Consequently, we find Suggs' first argument—that the sentence was based on clearly erroneous facts—meritless.

Suggs next argues that the district court failed to consider all § 3553(a) factors because it failed to address his acceptance of responsibility and his genuine remorsefulness and failed to fully consider the impact losing his newborn son had on his mental health and the resulting need for

mental-health counseling.[2]  Presumably, Suggs is arguing that the district court failed to consider "the history and characteristics of the defendant" and "the need for the sentence . . . to provide the defendant with needed educational or vocational training, medical care." §§ 3553(a)(1), (2)(D).

Although the district court need not "engage in a 'ritualistic incantation'" or "make specific findings related to each of the factors considered," the district court must articulate the reasons it reached the sentence imposed.  *Bolds*, 511 F.3d at 580 (citing *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999)); *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).  More specifically, we will not find a sentence procedurally unreasonable just because the district court failed to explicitly mention each § 3553(a) factor.  *See United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007) (quoting *United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007)) ("[A] district

---

[2] Section 3553(a) states:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider—

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed--
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for--
        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

    (5) any pertinent policy statement . . .;

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

court's failure to address each argument head-on will not lead to automatic vacatur" if the context and the record make the court's reasoning clear.).

Suggs first claims the district court failed to address his acceptance of responsibility and his genuine remorsefulness. The court did, however, acknowledge that Suggs accepted responsibility for his conduct. When calculating the advisory sentencing range, the district court credited Suggs with a two-level reduction in his offense level for accepting responsibility, which reduced his offense level from 14 to 12. Additionally, the district court stated it had "read [Suggs'] sentencing memorandum." (Sentencing Tr., R. 23, Page ID # 145.) It later stated it had "carefully considered the matter and reviewed the PSI and the sentencing memoranda and the arguments of counsel." (*Id*., Page ID # 149.) In his sentencing memorandum, Suggs stated that he "has accepted full responsibility for his conduct," (Def.'s Sentencing Mem., R. 11, Page ID # 71), and that he was "very sorry for [his] conduct in this case." (*Id*., Page ID # 74.)

Moreover, when the court inquired as to Suggs' position regarding the type of sentence to be imposed for his related supervised release violation, Suggs' counsel responded, in part, "I attach particular significance that he timely accepted responsibility both in this case and in the supervised release violation."[3] (Sentencing Tr., R. 23, Page ID # 161.) The district court responded, "Counsel, I'll just note for the record, the guidelines in this instance, he received credit for accepting responsibility, the two levels under the advisory guidelines. So again, he has received that credit for accepting responsibility in a timely fashion, not falsely denying any relevant conduct here." (*Id*., Page ID # 162.) This exchange demonstrates the district court took into consideration

---

[3] At the same hearing Suggs was being sentenced for the § 922(g)(9) and § 924(a)(2) charge at issue here, he was also being sentenced for violating the terms of his supervised release stemming from a prior charge. Because the hearing had already transitioned to sentencing Suggs for his supervised release violation at this point, Suggs' counsel likely misspoke when he said, "in this case and in the supervised release violation."

his acceptance of responsibility. The context and the record make clear that the court considered Suggs' history and characteristics. For these reasons, the district court did not abuse its discretion in the way it dealt with Suggs' acceptance of responsibility and remorse.

Suggs next argues that the district court failed to fully consider the impact losing his newborn son had on his mental health and the resulting need for mental-health counseling. This is also incorrect. The district court specifically mentioned the loss of Suggs' newborn son, noting that "he had a child that passed away at birth in 2005. And that is certainly tragic." (Sentencing Tr., R. 23, Page ID # 152.) The court went on to acknowledge that Suggs "has participated in some mental health counseling in the past. He last attended counseling in 2020, April, prior to his arrest in the instant offense." (*Id.*) As mentioned above, a district court need not hit every argument a defendant makes head-on, but in this instance, the district court did. For these reasons, the district court did not abuse its discretion in the way it dealt with the impact losing his newborn son had on his mental health and the resulting need for mental health counseling. Consequently, Suggs' challenge to the second step of the procedural-reasonableness analysis fails.

Suggs' final argument regarding the procedural unreasonableness of his sentence is that, by adopting the findings and recommendations of the PSI, the district court failed to adequately create a record for appeal. This is also incorrect.

In essence, the third step in the procedural-unreasonableness analysis assesses whether the district court "adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *Bolds*, 511 F.3d at 581. It is "not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative." *Gall*, 552 U.S. at 54. However, if a defendant raises a particular argument in support of a lower

sentence, the record must reflect that the district judge both considered the defendant's argument and explained the basis for rejecting it. *Bolds*, 511 F.3d at 580 (citing *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007)). Here, Suggs does not refer to any arguments he made to the district court that it failed to specifically address. Instead, Suggs argues that "[t]he record merely indicates that the court would follow the recommendation of the probation officer for an upward variance, without any further explanation." (Appellant's Br. 9.) The record overwhelmingly proves otherwise.

As an initial matter, Suggs is correct that the district court adopted the factual findings and sentencing recommendations of the PSI. However, before stating it would adopt the PSI recommendations, the court extensively explained its reason for doing so. Among many other considerations, the court mentioned the nature of the offense, the history and characteristics of the defendant, including his lengthy record of violent criminal activity toward women, his mental health issues, and his recidivist nature. Further, the district court considered that the "average sentence nationally for the offenses involving firearms with a criminal history category IV is 53 months." (Sentencing Tr., R. 23, Page ID # 153.) Of special note was that Suggs had recently been sentenced to 96 months for the same conduct and had been released from the Bureau of Prisons for approximately one month before the present offense occurred.

After its lengthy explanation of Suggs' criminal history and background, the district court decided it would "follow the recommendation of the probation department. And that is just a recommendation." (*Id.*, Page ID # 158). While Suggs is correct that the district court chose to follow Probation's recommendation, the court provided an adequate explanation of its sentencing decision for appellate review.

III.

Because we find the district court's sentence to be procedurally sound, we must now consider whether the sentence is substantively reasonable. *Bolds*, 511 F.3d at 581 (quoting *Gall*, 552 U.S. at 51). Substantive reasonableness is always reviewed for abuse of discretion. *United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015).

In reviewing for substantive reasonableness, this Court "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Bolds*, 511 F.3d at 581 (quoting *Gall*, 552 U.S. at 51). "For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (internal quotations omitted). As we noted in *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018):

> A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals). The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness. It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual.

Furthermore, for sentences within the Guidelines range, we may apply a rebuttable presumption of substantive reasonableness, but no presumption may be made for outside-Guidelines sentences. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009).

Suggs argues that his sentence is substantively unreasonable because the district court: (1) failed to fully consider his age and likelihood of recidivism; (2) failed to fully consider his mental health issues; (3) varied from the Sentencing Guidelines to an unreasonable degree; and (4) imposed a sentence greater than necessary to comply with the purposes and principles of sentencing. The government responds that the district court was proper in placing greater emphasis

on some § 3553(a) factors than others and that the sentence imposed was reasonable under the totality of the circumstances.

Concerning Suggs' first argument, the district court *did* consider Suggs' age and likelihood of recidivism. First, the court acknowledged that Suggs is "41 years old with a criminal history starting at the age of 15." (Sentencing Tr., R. 23, Page ID # 150.) Additionally, Suggs' age was mentioned in the PSI and in his sentencing memorandum, which the district court stated it had read and considered. The district court then considered the likelihood of Suggs committing more crimes and stated, "He is a recidivist. He continues to commit crimes. He continues to violate terms of supervision." (*Id.*, Page ID # 154.) Specifically regarding his prior convictions, the district court acknowledged that Suggs' criminal history included a conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). For this prior § 922(g) conviction, Suggs was sentenced to 96 months' imprisonment—more than twice what he received for this offense. In fact, the court specifically noted that Suggs had only been released from federal custody for approximately one month when the present crime occurred. The district court also concluded that Suggs' many periods of incarceration had failed to dissuade him from engaging in violent criminal conduct. For all these reasons, contrary to Suggs' first argument, the district court adequately considered his age and likelihood of recidivism.

Suggs' second argument regarding the alleged substantive unreasonableness of his sentence—that his mental health issues warranted a reduced sentence—is also a non-starter. As explained above in the procedural-reasonableness discussion, the district court properly considered Suggs' traumatic experiences and his failure to seek mental health resources. Although the record makes clear that the district court placed greater emphasis on Suggs' criminal history than on his need for mental health counseling, it is not necessarily substantively unreasonable to place greater

emphasis on some factors than others. *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) ("A district court may place great weight on one factor if such weight is warranted under the facts of the case.").

Next, Suggs argues the degree to which the district court varied from the Sentencing Guidelines is unreasonable. Here, the district court imposed a sentence that was 67% longer than the midpoint of Suggs' advisory range. According to the U.S. Sentencing Commission, when a judge opts to impose an upward variance in a felon in possession of a firearm case, "[t]he average sentence increase was 52.4%." USSC, *Quick Facts: Felon in Possession of a Firearm*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY19.pdf.

In general, "[a] greater variance from the guidelines range requires a more compelling justification." *United States v. Lee*, 974 F.3d 670, 666–67 (6th Cir. 2020). At sentencing, the district court noted the failure of prior convictions to reform Suggs' conduct. The court thus concluded that "this case clearly is not within the heartland. And just based upon the entirety of the record, . . . and the defendant's history and characteristics, clearly an upward variance is warranted here." (Sentencing Tr., R. 23, Page ID # 160.) Further, based on the offense level contemplated in his plea agreement, Suggs expected to receive a sentence in the range of 37 to 46 months. The government and Probation both recommended that the district court impose an upward variance that would place Suggs' sentence within the plea agreement's projected range. Based on the totality of the circumstances, the district court did not abuse its discretion.

Finally, Suggs argues the sentence is greater than necessary to comply with the purposes and principles of sentencing. In other words, Suggs argues that a lower sentence would be "sufficient but not greater than necessary to comply with 18 U.S.C. § 3553(a)." *United States v.*

*Tristan-Madrigal*, 601 F.3d 629, 631 (6th Cir. 2010); *see* 18 U.S.C. § 3553(a)(2).  The district court considered each of these principles when crafting Suggs' sentence.  Moreover, Suggs had just been released from prison following a 96-month sentence for the same conduct.  The district court did not abuse its discretion in deciding that if 96 months was insufficient to reform his conduct, a within-Guidelines sentence of 21 to 27 months would be insufficient too.

Suggs provides no support for the argument that a shorter sentence would comply with the purposes and principles of sentencing.  In this circuit, we give "'due deference' to the district court's conclusion" as long as the factors justify the variance.  *United States v. Dunnican*, 961 F.3d 859, 880 (6th Cir. 2020) (quoting *Gall*, 552 U.S. at 51).  The fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  *Gall,* 552 U.S. at 51.  Consequently, the district court did not abuse its discretion and impose a sentence greater than necessary to comply with the purposes and principles of sentencing.

## IV.

For the foregoing reasons, we find Suggs' sentence is procedurally and substantively reasonable.  Accordingly, we **AFFIRM** the judgment of the district court.